MARY ANN THOMAS

*v.*

JOHN G. SCHEIBLE.

[Decided June 25th, 1920.]

1. A devise of specific real estate to complainant for her own use during her life, and with power of appointment "to hospital or other equally desirable purposes," is void as to the power of appointment— not being a gift for religious, charitable or educational purposes.

2. A power of sale collateral to, or in aid of, such void gift is likewise void.

3. In determining testamentary intention as expressed in a will and codicil, the dispositions made by the will are not to be deemed altered or revoked further than is absolutely necessary to give effect to the codicil.

4. *Held,* that testatrix expressed no intention, by the codicil in this case, to enlarge complainant's life estate.

5. Decree for specific performance by vendee denied—complainant having neither a fee-simple estate nor power of sale.

On final hearing.

*Mr. Joseph Beck Tyler,* for the complainant.

*Mr. Aaron V. Dawes,* for the defendant.

BUCHANAN, V. C.

Complainant's bill is for the specific performance by defendant, as vendee, of a contract for the sale of certain lands at Asbury Park, New Jersey. Defendant moved to dismiss complainant's bill, as amended, for want of equity. At the argument it was agreed that the case should be considered as on final hearing, defendant admitting the truth of the allegations of fact in the bill, and introducing no other evidence.

The sole question in the case is as to whether complainant is able to convey a marketable title. The premises in question were owned in fee by one Agnes W. Leavitt, who died seized thereof in 1894, leaving a will and three codicils thereto, duly executed and valid under the laws of this state for the disposal of real estate under the provisions thereof; duly probated at the domicile of testatrix; and duly recorded, by exemplified copy, in Monmouth county, pursuant to the statute.

The will, dated September 8th, 1890, gives the entire estate of testatrix to her sister (since deceased) for life, and subject thereto, provides for numerous bequests and devises to divers beneficiaries, with a residuary clause to a church, a Bible society and two missionary societies. One of these devises disposes of the premises in question, in the following language (hereinafter called "Clause A") :

"And further I give, devise and bequeath to the aforesaid Mary Ann Thomas, the house and lot situate on the corner of Kingsley Street and Fifth Avenue, New Jersey, which I have recently purchased from William Meyers to be used by her for her own benefit during her life and the furtherance of those benevolent designs she knows I wish carried out as a memorial of my deceased husband Hart A. Leavitt and which by her last will I direct that she shall appropriate to hospital or other equally desirable purposes. For which if necessary she has my consent to dispose of said property."

At the end of the will appears the following clause (hereinafter called "Clause B"), which also relates to the premises in question:

"And I further direct my said executors or trustees that the house and lot bequeathed by me to Mary Ann Thomas for her use during her natural life shall be delivered to her free of all encumbrances to be paid for out of my estate if not already fully paid for during my life. At her death to be appropriated either in money value or as it stands as designated by me in a former clause of this my last will and testament. The furniture thereof to be hers in total and absolutely."

The first and third codicils are dated, respectively, October 10th, 1890, and January 11th, 1893. Neither contains any provision affecting the devise to complainant. The second codicil is undated, and there is no evidence as to its date. The second item thereof (hereinafter called "Clause C") reads as follows:

"The sum of Three Thousand Dollars, ($3000.00) which I bequeathed to Jessie Townsend, I hereby revoke, feeling that she does not need it and direct that this sum be used toward payment of mortgage on property No. Two hundred (No. 200) Fifth Avenue, Asbury Park, New Jersey, said property being left unconditionally to Mary A. Thomas."

A further provision, which was not adverted to by either counsel, but which seems to me to be of some importance in the determination of the issue involved, is found in the last codicil where, after revoking a gift in the will of a parcel of Philadelphia real estate in fee to complainant, Mary A. Thomas, and devising it instead to the nephew Edward G. Whitesides, she adds the following marginal note (hereinafter called "Clause D"):

"At this decease said lot to be returned (or if sold the money obtained to the estate for the benefit of the memorial Hospital mentioned in a former clause of the above Will."

Considering, first, the original will itself, it seems clear that complainant under its terms took neither title in fee nor power to convey—merely a life estate in the premises. The gift by clause A, following the life estate to complainant, is a gift of

the remainder in trust for what the testatrix undoubtedly conceived of as charitable purposes, or purposes similar thereto—the trust to be effectuated by the will of complainant. Unfortunately, the language used by testatrix—"to hospital or other equally desirable purposes" (to which no aid or cure is given by the other clause—"the furtherance of those benevolent designs she knows I wish carried out"), does not constitute a gift to charitable use. Assuming that a gift "to hospital purposes" is a gift to charitable use, it is perfectly apparent that "other equally desirable purposes" permits the disposition of the property by complainant for purposes which are not charitable.

In the first place, what criterion is to be used in determining what "other purposes" are equally as desirable as hospital purposes? There is no established standard, either judicial or otherwise. Obviously, the purposes which might be deemed so "equally desirable" would vary with the individual whose judgment was exercised thereon; and, equally obviously, many persons might, and doubtless would, consider divers purposes which could not come within the category of charitable purposes, equally as "desirable" as hospitals.

The only part of clause B which affects this devise is that which provides that the premises in question are given free of encumbrance. No other portion of the will is of any relevance or materiality.

The gift in remainder, therefore, would necessarily have been held invalid had the will stood as it was originally executed. *Livesey* v. *Jones, 55 N. J. Eq. 204; Thomson's Executors* v. *Norris, 20 N. J. Eq. 489* (at p. 523); *DeCamp* v. *Dobbins, 31 N. J. Eq. 671* (at p. 695); *Hyde's Executors* v. *Hyde, 64 N. J. Eq. 6; Smith* v. *Pond, 107 Atl. Rep. 800.*

It follows, necessarily, that the power of sale would fall with the invalid gift—for the power is plainly given only for the purpose of carrying out the gift in question.

Turning now to clause D, in the last codicil, reference is there made to "the memorial hospital mentioned in a former clause in the above will." There is, however, no memorial hospital mentioned anywhere in the will or codicils—nothing but

the language used in clause A, which, as has been seen, does not establish a memorial hospital. Nor does this provision of "Clause D" purport itself to establish such a hospital—it is for the benefit of a hospital otherwise established or to be . established. Hence, there is nothing in this clause to validate the void gift.

Remains clause C in the second codicil. The language of this clause in nowise validates the gift for "hospital or other equally desirable purposes." The question which here arises is, Does the testatrix by this clause intend to eliminate the trust she has attempted to impress upon the remainder in the Asbury Park property and convert the life estate of complainant into a fee?

The will and codicils are, of course, to be construed together, and effect given if possible to every part. The words used are not necessarily to be construed technically, but the intent of testatrix is to be ascertained and given effect to, in so far as legal or moral principles are not thereby contravened. *Rogers* v. *Rogers, 49 N. J. Eq. 98; Marshall* v. *Hadley, 50 N. J. Eq. 547; Brearley* v. *Brearley, 9 N. J. Eq. 21.*

What is the force and effect, then, which is to be attributed to the phrase "said property being left unconditionally to Mary A. Thomas?"

There are only two alternatives—either the intent and meaning thereof is to revoke the attempted remainder in trust and give complainant the fee, or it is not. Cogent arguments may be made on each theory.

In support of the first, it may be pointed out that testatrix plainly had no accurate knowledge of the legal meaning of all of the words and phrases used in the will. It bears all the *indicia* of having been drafted by testatrix herself with the aid and assistance of a prior will or wills which had been drafted by competent counsel. The argument would then follow that the word "unconditionally" was not used at random or without meaning, but that it was not used in its strict technical meaning; those provisions of clause A which follow the gift of the life estate if not in legal effect a gift conditional, are in form practically such, and would be, and were deemed such by testa-

trix. Hence the only logical effect to give to the perplexing phrase is as though it were paraphrased "said property being now hereby devised by me to Mary A. Thomas, freed of the conditions imposed by me in the will, namely, the conditions that she use it for the furtherance of those benevolent designs, &c., and appropriate it by her will to hospital, &c., purposes."

And the argument would proceed (by way of rebuttal of the counter-argument) : There is no other reasonable meaning which can be ascribed to it. Clearly she did not mean that she freed the *life estate* from conditions—for while the provision that the life estate be used for complainant's own benefit is perhaps technically a condition, practically of course, it constitutes no condition, but rather the absence of condition—for it cannot be supposed that by those words testatrix meant to compel complainant to use the income for her own selfish material benefit and to prevent her from giving part or all away in charity, if she felt so disposed, and certainly no argument is needed to support the positive conclusion that testatrix, by this phrase in clause C had no idea that she was removing the "condition" that the life estate was to be used for complainant's benefit.

Furthermore, it cannot be supposed that testatrix by "unconditionally" meant "without encumbrance," because it would be an inapt word for that purpose, and testatrix had not only already provided in the original will that the property should pass without encumbrance, but also, in so doing, had there used the apt and proper words for that purpose.

No possible meaning, other than those discussed can be ascribed to the phrase.

It seems to me, however, that testatrix did not intend to give a fee-simple and unconditional to complainant—that she did not intend to abrogate the disposition in remainder which she had previously provided, and which though invalid, was assuredly not known by her to be invalid; and therefore that she did not intend to and did not give complainant more than the originally contemplated life estate.

In *Rogers* v. *Rogers, 49 N. J. Eq. 98,* Vice-Chancellor Van Fleet sets forth the principle that in construing a will every effort is to be made to give effect to every provision therein, before coming to the last resort of declaring two provisions to be utterly repugnant to each other, and therefore holding the former of such two nugatory and the latter thereof as expressive of testator's intention.

I take it that this principle is substantially as true where the testamentary disposition under consideration consists of a will and one or more codicils, as where there is a will without codicils. Of course, the very fact of the codicil usually denotes a change in the will, either by addition, subtraction or alteration of provisions—and one therefore rather looks to find some clause or clauses in a codicil necessarily repugnant to some clause or clauses in the will. But, on the other hand, not infrequently codicils are merely explanatory—as indeed is the first codicil to the will now under consideration.

Says Mr. Jarman (*Wills (6th ed., 1910) 177*) :

"Numerous are the questions which have arisen in regard to the extent to which a codicil affects the disposition of a will or antecedent codicil. * * * In dealing with such cases it is an established rule not to disturb the dispositions of the will further than is absolutely necessary for the purpose of giving effect to the codicil."

The opinion of Vice-Chancellor Reed in *Lyon* v. *Clawson, 56 N. J. Eq. 642* (affirmed on the opinion below, *58 N. J. Eq. 584*), shows that he there applied this same rule, although he does not state the rule.

In order, therefore, to justify a court in determining that any provision of a will is altered or revoked by a codicil, it must be quite clear that such was testator's intention.

In the instant case it is to be noted that there is nothing in the phrase "said property being left unconditionally to Mary A. Thomas" (or anywhere else in the codicil)—except the argued implication in that behalf of the word "unconditionally" —which necessarily, or even probably, indicates an intention to alter the extent of the gift to complainant. "Being left" may mean "having been left" just as well as it may mean "being hereby left."

Again the language at the beginning of the codicil, "all the provisions of which" (*i. e.*, the original will) "I wish carried out except such as I now specify," is not without significance. She does not specify, other than conjecturally, any desire to have the trust in remainder to hospital, &c., purposes, *not* carried out.

In this codicil, as well as in the third codicil, she revokes a gift, correctly using the word "revoke." The probability is, it seems to me, that had she desired to revoke the provision in remainder she would have done so in like manner.

Again, in order to ascertain the intention of testator, the whole testamentary disposition, will and codicils, so far as relates to the subject-matter in question, must be read together. *Graydon* v. *Graydon, 25 N. J. Eq. 561.* In clause A of the will she stated her intention that at the death of Mary A. Thomas, the property should be appropriated for hospital or memorial purposes; and in clause B she reiterates this. And in clause D, in the last codicil, she again shows that she still has in mind that she has made this hospital or memorial provision and that it is still in force and effect, for she makes another provision in aid or benefit of it. The force of such repeated manifestations of interest and intention is pointed out in *Lyon* v. *Clawson, supra.*

In view of these considerations therefore it seems to me not merely that there is no clear indication of any intent to revoke the attempted gift in remainder, or to enlarge the gift to complainant, but that the indication is rather that no such intent existed.

It is true that "unconditionally" is not an apt word to express freedom from encumbrance, and that testatrix has elsewhere in the will shown her knowledge of apt wording therefor and actually provided therefor. But on the other hand the sentence at the end of clause B and two instances at the beginning of the first codicil, show that in those cases when desiring to express an intention to give the beneficiary complete ownership she used the word "absolutely." The probability is that she would have used the same word here had she desired to express

the same intention—especially since it seems clear from the wording of the last sentence in clause B that she was there using her own language; whereas the misspelling of "incumberance" may indicate that she was in that case using an acquired phrase with which she was not perfectly familiar, and to the use of which she had not become more accustomed at the later date of the second codicil. "Unconditionally" is by no means an unheard of means of expressing freedom from encumbrance. *Lyon* v. *Clawson, supra,* also points out the inferences to be drawn from a consideration of the actuating idea of the testatrix in the making of the change by codicil. Here the mind of testatrix was intent upon the fact that the Asbury Park property was mortgaged, that she desired to have it pass free from that or other encumbrance, as she had already stated in her will— and her revocation of the gift of Jessie Townsend, who "does not need it," was for the purpose of assuring the payment of the mortgage. My belief is therefore that the intention of testatrix would be correctly expressed by paraphrasing the language thus: "I revoke the bequest of $3,000 to Jessie Townsend, because I feel that she does not need it, and I direct that this sum be used toward the payment of the mortgage on the Asbury Park property, which, as I have already provided in my will, is to be delivered to her free of encumbrance."

It is, of course, possible to construe the word "unconditionally" as properly (though unnecessarily) used in its accepted legal meaning—an added statement out of abundant caution that the life estate was left to complainant without conditions. Such was the case in *Kratz* v. *Kratz, 59 N. E. Rep. (Ill.) 519,* where testator left to his wife, for life or widowhood, all "my lands, tenements and hereditaments * * * ; and all my interest in real estate, mortgages, notes absolutely and unconditionally."

It is not requisite, however, to determine in which of two or more possible meanings the word was used by testatrix. It is sufficient for the determination of the case at bar that it was not intended to denote a gift of the fee to complainant, and this of course leads to a decree dismissing the bill.