GENERAL INVESTMENT COMPANY

*v.*

AMERICAN HIDE AND LEATHER COMPANY.

---

JACOB B. JOEL et al.

*v.*

AMERICAN HIDE AND LEATHER COMPANY.

[Decided May 18th, 1925.]

1. The fact that the rights of preferred stockholders in a corporation may be injuriously affected by the issue of prior preference

stock constitutes no bar to the issuing by the corporation of such stock when the power to do so is conferred by the statute under which the corporation is organized and the statutory provision is an integral part of the corporate charter.

2. In buying stock for retirement, a corporation is required to purchase ratably from each stockholder who desires to sell.

3. A corporation cannot legally appropriate to the purchase of stock for retirement accrued dividends that remain in the treasury of the company, against the objection of stockholders who are entitled to share in the distribution thereof.

4. The fixing by a corporation of the redemption price of stock which it may wish to retire, at a figure above par, is not a violation of the clause in the Corporation act limiting the amount of dividends to be paid on such stock.

On appeals from decrees of the court of chancery advised by Vice-Chancellor Bentley, whose opinions are reported in *97 N. J. Eq. 214, 230.*

*Messrs. Hudspeth & Demarest,* for the appellant General Investment Company.

*Mr. Arthur F. Egner,* for the appellants Joel et al.

*Mr. John R. Hardin* and *Mr. Waldron M. Ward,* for the respondent.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The American Hide and Leather Company was organized in May, 1899, under the General Corporation law of 1896. By its certificate of incorporation it was authorized to issue $35,000,000 worth of capital stock, divided into three hundred and fifty thousand shares of the par value of $100 each, fifty per cent. of the authorized issue to be preferred stock and fifty per cent. common stock. Pursuant to this authorization, there were actually issued one hundred and twenty-five thousand four hundred and eighty-three shares of preferred stock and one hundred and twelve thousand seven hun-

dred and forty-one shares of common stock, the unissued stock still remaining in the company's treasury. Under the provisions of the certificate of incorporation the holders of preferred stock were entitled to receive each year out of the surplus net profits of the corporation a yearly dividend of seven per centum, if declared, before any dividend should be set apart or paid on the common stock. These dividends were to be cumulative, so that, if any year's dividends amounting to seven per centum were not paid on the preferred stock, the deficiency was to be payable, subsequently, before any dividends were set aside or paid on the common stock.

In the latter part of the year 1924 the board of directors of the corporation, considering it to be for the benefit of the company that changes should be made with relation to the capital stock of the company, both that issued and outstanding, and that still remaining in the treasury of the corporation, issued a notice to the stockholders containing a suggested plan for the accomplishment of this purpose, and providing for a meeting of the stockholders to pass upon the question of the adoption or rejection thereof, after having first adopted a resolution that the changes specified in the notice were advisable. In brief, the plan, as set out in the bills of complaint, was to substitute for thirty-five thousand shares of the unissued preferred stock of the company a new issue of thirty-five thousand shares of eight per cent. cumulative prior preference stock, having priority both as to its principal and cumulative dividends at the rate of eight per cent. over the outstanding preferred stock, and to be subject to redemption at any time after three years from the issue thereof at fifteen per cent. above par. The plan further provided for a decrease of the total capital stock by canceling ten thousand of the preferred shares and sixty thousand shares of the common stock still remaining in the company's treasury. It also provided for the purchase for retirement of thirty thousand shares of outstanding preferred stock at not above par, and that, in making such purchase, the Chase Securities Corporation, the holder of fifteen thousand shares

thereof, should be entitled to sell to the company its holdings at a price of, approximately, $69 per share, the price to be paid, to some extent, out of a fund accumulated by the company and held in its treasury, which fund, as complainants aver, represents accumulated accrued and unpaid dividends on the outstanding preferred stock.

In compliance with this notice, the holders of, approximately, three-fourths of the outstanding preferred capital stock and seven-tenths of the outstanding common stock attended the meeting, either in person or by proxy, and voted in favor of the adoption of the proposed plan. Before the scheme was acted upon, however, the present bills of complaint were filed, praying an injunction restraining the corporation from carrying it into execution, upon the ground that it was without warrant of law and injuriously interfered with the rights of the complainants. A preliminary injunction having been refused, an appeal was taken to this court to review the validity of the order of refusal.

The principal contention on the part of the appellants is that the issuing of cumulative prior preference stock carrying a dividend of eight per cent., and giving it precedence over existing preferred stock, both in payment of dividends and the repayment of principal upon dissolution, is in violation of the vested rights of the holders of such stock, and, consequently, without warrant of law. The question presented is not an entirely novel one in this court. In the case of *Berger* v. *United States Steel Corp., 63 N. J. Eq. 506,* it was contended that a scheme for the retirement of a large block of preferred stock by exchanging for it bonds of an equal amount, to be issued by the corporation for the purpose, involved an absolute change of the previous status of those preferred stockholders who should decline to make the exchange by subjecting their stock to the prior claim and lien of those who should take the bonds, thus injuriously affecting their right to the payment of dividends and to preference in the distribution of capital upon dissolution. It was considered by the court of chancery that a scheme producing such results was in violation of the vested rights of the pre-

ferred stockholders, and, for this reason, an injunction was ordered restraining the corporation from putting it into execution. The case was then appealed to this court, and we dissented from the conclusion of the court of first instance. *Id. 809.* We held that although the rights of the complainant, who was a preferred stockholder, might be injuriously affected in the respects indicated, yet that fact could not operate to nullify powers conferred upon the corporation by the act under which it was organized (our present Corporation act), and then pointed out that the proposed plan was clearly within the powers thus conferred. A like situation, we think, is presented in the present case. Section 27 of the statute provides that any corporation organized under it may, at any time during its existence, and without regard to the character of its outstanding stock, "create one or more classes of preferred stock," providing the board of directors shall resolve it to be advisable to do so, and two-thirds in interest of each class of stockholders shall thereafter approve such proposed action. The power thus conferred is only curtailed by those other provisions of the statute which declare the limits beyond which the corporation may not go in issuing such new stock. Nowhere in any of those provisions is there an intimation that the corporation in exercising this power shall not create any one or more classes of preferred stock which shall confer upon the holders thereof rights superior to those of the holders of previous issues of preferred stock, and, in the absence of such intimation, the power thus broadly conferred by the legislature is not to be limited by judicial decision.

It is further argued in support of this point that the proposed change is not permitted by the articles of incorporation; that those articles constitute a contract between the stockholders *inter esse,* which cannot be altered except by the unanimous consent of such stockholders. The answer to this argument is that the fifth section of the statute declares that "this act shall be a part of the charter of every corporation * * * hereafter formed hereunder;" and that, consequently, the twenty-seventh section of the act, the scope of

which we have discussed, is in an integral part of the stockholders' contract, and, so, is binding upon every stockholder.

The next point submitted by counsel for the appellants is that they are entitled to be afforded an opportunity of selling to the corporation for retirement their *pro rata* holdings of the total amount of shares, the purchase of which is contemplated, and that this right is injuriously affected by the preference given to the Chase Securities Corporation in the making of such purchase. We concur in the view that, in the purchasing of this stock for retirement, it should be acquired ratably from each stockholder who desires to sell. It was so held by us in the *Berger Case, supra;* and, if it be true that the proposed scheme is in violation of that right—which seems, at least, doubtful—the respondent company should be restrained from refusing to afford the complainants the opportunity to dispose of their stock to the corporation to the extent indicated.

Next, it is asserted on behalf of the appellants that the corporation is without power to appropriate to the purchase of the stock proposed to be retired accrued dividends belonging to the preferred stockholders, which now remain in the treasury of the company. If the purpose indicated is to be attributed to the corporation, the appellants are entitled to have it restrained from using so much of these accrued dividends as are applicable to the stock held by them, respectively, in the purchase contemplated by the plan which has been adopted by the shareholders. The appellants are not concerned, however, with this proposed action of the corporation so far as it relates to the accumulated dividends payable to other stockholders, who either have not made any complaint against the carrying into execution of the proposed plan, or who have by their votes approved of it.

Lastly, we are told that the provision for the redemption of the so-called cumulative prior preference stock, in whole or in part, at any time after three years from the issue thereof, for fifteen per cent. above par, is a violation of section 18 of the Corporation act as amended in 1901 (*Comp.*

*Stat. p. 1608*), which prohibits the payment of dividends on preferred stock in excess of eight per cent.; and the argument is that the payment of this premium is, in legal effect, the payment of a dividend in excess of the limit fixed by the statute. This argument, however, overlooks the earlier provision of the section, which declares that "preferred stock may, if desired, be made subject to redemption at any time after three years from the issue thereof at a price not less than par." The fixing of a minimum price connotes a maximum, the amount of which the legislature designedly left to the discretion of the corporation; and that this was the legislative design is made clear by the fact that the statutory provision as originally enacted required that the redemption price, which should not be less than par, be expressed in the stock certificate (*P. L. 1896 p. 283*), and that the amendment of 1901 makes no change therein except by eliminating the requirement that the redemption price shall be stated in the stock certificate. Reading the whole section together, we have no doubt that the fixing of the redemption price at a figure above par is not a violation of the clause therein limiting the amount of dividends to be paid upon such stock.

For the reasons stated, the order appealed from will be affirmed, with the modifications indicated.

WHITE, J. (concurring).

Complainants own cumulative seven per cent. preferred stock in defendant corporation, upon which there has been default in payment of dividends to the extent of one hundred and forty per cent. The corporation now has a surplus of $5,000,000. It has outstanding, approximately, $12,500,000 preferred stock and $11,500,000 common stock (par value), both of which have voting power without distinction as to whether common or preferred, and there remains unissued of its total authorized capital (which is $35,000,000) $5,000,000 of preferred stock and $6,000,000 of common stock. The board of directors and more than two-thirds of each class of stockholders have adopted a resolution to—

1. Change and reclassify thirty-five thousand shares ($3,500,000 at par) of the unissued preferred stock into thirty-five thousand shares of eight per cent. cumulative prior preference stock having priority, both as to dividends and principal, over the remaining preferred stock, and over the common stock.

2. Besides reducing the *authorized* capital stock of the corporation by $10,000,000, reduce the *outstanding* capital stock so that it will be approximately—

First preference eight per cent. cumulative (new) ....... $3,500,000
Cumulative seven per cent. preferred (remainder of old
    stock) ........................................ . 6,500,000
Common stock (approximately) ..................... 11,500,000
this to be accomplished—

(a) By the purchase with $2,100,000 of cash out of the company's *capital assets* and retirement and cancellation of $3,000,000 (par value) of the outstanding cumulative seven per cent. preferred stock (thereby cancelling also the dividends in arrear thereon amounting to $4,200,000).

(b) The substitution (with proper *pro rata* subscription rights to outstanding stockholders preserved) of the $3,500,000 of first preference eight per cent. stock above mentioned for a like amount, share for share of the then remaining (that is after the purchase and retirement of the thirty thousand shares thereof above mentioned) outstanding cumulative seven per cent. preferred stock, thereby retiring the latter and cancelling $3,500,000 of additional present capital obligation and $4,900,000 of additional unpaid accrued dividend obligation thereon, such substitution to be brought about by sale of the new eight per cent. prior preference stock (at not below par) and purchase of a corresponding amount (at not above par) of the said remaining old seven per cent. preferred, or by direct exchange, share for share, as shall be deemed most satisfactory by the board of directors; it being expressly provided in said resolution that at no time shall there be outstanding more in the aggregate of prior preference stock and preferred stock than one hundred thousand shares, that would be upon the completion of this plan thirty-five thousand shares of prior preference stock and sixty-five thousand shares of preferred stock.

3. Amending article 4 of the certificate of incorporation accordingly, whereby, *inter alia,* "the holders of the eight per cent. cumulative prior preference stock shall be entitled to receive, when and as declared by the board of directors, dividends from the surplus of the corporation or from the net profits arising from its business, at the rate of eight per cent. per annum and no more, accruing from the date of issue of such stock, payable quarterly on dates to be fixed by the by-laws of the corporation, or by resolution of the board of directors. Such dividends shall be payable before any dividends shall be paid upon or set apart for the preferred stock or the common stock of the corporation, and shall be cumulative," &c., &c.

Complainants are the holders of preferred stock who voted against the adoption of the resolution, and they now ask that the corporation be enjoined from carrying out the provisions of the resolution so adopted, for substantially the following reasons:

1. The proposed amendment of the certificate of incorporation, by interposing a new class of prior preference stock ahead of preferred stock already issued in accordance with the original certificate of incorporation, is claimed to have no legislative authority.

2. The prior preference stock cannot be issued because it is claimed to invade the vested rights of the present preferred stockholders to have their cumulative unpaid dividends up to the present time discharged out of present or future earnings of the company before any prior charge can be placed thereon.

3. The proposed retirement of the $3,000,000 (par value) of preferred stock by the purchase thereof at a cost of $2,100,000 in cash, is claimed to be violative of the rights of the other preferred stockholders, because it is said the $2,100,000 purchase-money will be taken from the $5,000,000 surplus of the corporation, which, it is claimed, equitably belongs to the preferred stockholders on account of their arrears of unpaid dividends. The difficulty with this proposition, as it seems to me, is that it is founded on a false premise. The surplus of the corporation will not be decreased by this transaction, but, on the contrary, will be increased by the difference between the par value of this stock, $3,000,000, and the price, $2,100,000, which is to be paid for it. The $2,100,000 will therefore be paid out of capital assets (as the resolution says) and not out of surplus. So that without passing upon the question of whether or not the board of directors, particularly with the assent of two-thirds of the stockholders of each class, in reducing the amount of its outstanding capital stock, have the right to use money in the surplus for that purpose, it is sufficient now to say that such condition does not here arise.

4. The plan, if consummated, will, by ultimately leaving the number of common stock shares outstanding greater than the number of preferred stock shares, reverse the present condition and transfer the controlling weight of the voting power from the preferred stock as at present to the common stock.

5. The provision which makes the prior preference eight per cent. stock redeemable at the option of the board of directors after three years at 115 is claimed to be unauthorized by legislation, because section 18 of the Corporation act expressly limits the rate of annual dividend to not exceeding eight per cent., whereas, it is claimed this might give an additional, due to what is equivalent to, five per cent. per annum dividend, to the holders of this stock.

I am unable to see arguable merit in either of the two last above-named propositions. There was no provision in the original certificate of incorporation that the preferred stockholders should always have a voting power even with or greater than that of the common stockholders. On the contrary, when it came to voting, each shareholder voted as a shareholder in the whole, and not as a shareholder in any particular class. It was a mere accident that more preferred stock came to be issued and outstanding than common stock. It might have been exactly the other way. So, also, the redemption privilege at 115 of the new prior preference stock is not an obligation on the part of the corporation to retire the stock at that price, and, therefore, does not fall within the provision of section 18 of the Corporation act, which says that the dividend on the preferred stock which the corporation is thereby made *bound to pay* shall not exceed eight per cent. per annum. The redemption right is a privilege which the corporation may or may not adopt, as its business exigencies in the future may dictate. It is not bound to do so. If the prior preference stock on the market should become worth more than $115 per share, and for any reason the corporation might deem it advisable to retire its preferred stock and borrow the money with which to do so

336    COURT OF ERRORS AND APPEALS.

General Invest. Co. *v.* Am. Hide, &c., Co.    *98 N. J. Eq.*

at five per cent., instead of 8 per cent., in that event the option privilege of retirement at 115 would be quite valuable to the corporation. The only prohibition on the subject is that the corporation cannot make its preferred stock retirable at "less than par." Inferentially, of course, this means that it may make it retirable at more than par as well as at par. As this redemption authority clause is a part of section 18, which fixes the maximum of annual dividend at eight per cent., it seems to me quite obvious that the dividend limitation was not intended to affect the redemption provision.

Turning now to the first point, the question is, Where a corporation which might in the beginning have created the two classes of preferred stock here involved if it had seen fit to do so, but which, in fact, created only one class of preferred stock and one class of common stock, can it now, by amendment to its charter, create and interpose ahead of the preferred stock already created and issued and in the hands of stockholders (and, incidentally, ahead, also, of the common stock likewise so outstanding and held) a new class of preferred stock having preference, both in dividends and upon dissolution, in principal over both the existing preferred and common stocks? This right is challenged—first, on the ground that the amending power of this corporation has been exhausted by an amendment to its charter, which took place some years ago, the assertion being that there is no legislation authorizing an amendment to an amendment. This seems to me trivial. The charter as it now exists in its original state or as the result of an amendment, is the charter of the corporation to which the existing legislation applies at the present time, and legislative authority to amend, it would seem to me, would apply to this charter as it now exists; second, it is urged that the amendment legislation does not provide for the creation of a class of preferred stock where such a class already existed before the amendment. I cannot unite with this view. The language of section 27 is: "Every corporation organized under this act may change the nature of its business, change its

name, increase its capital stock, decrease its capital stock, change the par value of the shares of its capital stock, change the location of its principal office in this state, extend its corporate existence, *create one or more classes of preferred stock,* and make such other amendment, change or alteration as may be desired, in the manner following," &c. No one, it seems to me, can deny that what is now proposed to be done is, in fact, the creation of a class of preferred stock. There is nothing in the legislation which limits the power to do this thing to corporations which have not, in fact, already created one or more classes of preferred stock. The legislation seems to apply to all corporations, because it says, "every corporation organized under this act." The objection, if sound, would apply quite as logically in favor of the existing common stockholders where no class of preferred stock had originally been provided for in the certificate of incorporation; but that would, in effect, nullify the amendment power given by the twenty-seventh section. A mere statement of this proposition seems to me to indicate the unsoundness of the contention here urged. I think, therefore, that valid objection to the creation of this prior preference stock cannot be found in the alleged absence of legislation authorizing its creation by amendment as here proposed. If there is such valid objection it must lie rather in the contract rights of the holders of the existing preferred stock, and in the fact, if it is a fact, that those rights would be successfully invaded by the rights given the prior preference stockholders; and that, after all, is the big question in this case.

It is said that this question has never been decided in this court, and no case has been called to my attention in direct conflict with this assertion. The same contention, however (namely, that where preferred stock is issued with the usual preference provisions for its dividend and its principal on dissolution over dividends and principal of the common stock, it carries with it, in itself, a contractual obligation on the part of the corporation that there will not, in the future,

be created by the corporation any other class of obligation holders having a superior priority, or even an equality, to or with that thus secured to the already existing preferred stock), was urged in the case. of *Berger* v. *United States Steel Corporation, 63 N. J. Eq. 809,* where the attempt was to prevent a bond issue of a somewhat complicated nature which would take precedence over the preferred stock already in existence, and this court there held that there was no contractual right in the preferred stockholder which would be invaded by such an issue.

Of course, the point is a particularly important one, for while it is quite desirable that corporations organized under the laws of New Jersey should have ample proper latitude in making readjustments to meet new and unexpected business conditions, it is even more important that the contractual rights of stockholders of all classes of stock shall be upheld by the courts under all circumstances. If, therefore, the preferred stock of this corporation, when originally created, had had affixed to it by the certificate of incorporation, as one of the terms of its preference (as expressly authorized by the Corporation act) a provision to the effect that no class of stock should ever be issued having a preference over or equality with it, without the unanimous consent of all of the holders of this class of stock, I should, without hesitation, say that the present proposed issue of prior preference stock could not be upheld. and that, even though every cent of past dividends has been, in fact, paid; but there was no such provision, although it is a very common one in preferred stock issues. In its absence, therefore, I incline to the view that as to future dividends on the old preferred stock, and also as to priority of payment of principal upon dissolution, the proposed prior preference stock does not invade any contract rights of the old preferred stockholders. It was a part of their contract with the corporation and with the other stockholders, both common and preferred, that the corporation should have all the powers given it by the legislation in existence when the corporation was organized, unless those

powers were expressly surrendered in some particular respect by the articles of incorporation themselves.

This brings me to the only question in the case which has given me trouble, and that relates to the earned but unpaid dividends up to the present time upon the old preferred stock. These unpaid dividends, amounting in all to one hundred and forty per cent., seem to be partially covered by present surplus (to the extent of about forty per cent.), but as to the rest of them seemingly, although cumulative, the company has not, up to the present time, had sufficient earnings to meet them if the board of directors saw fit to apply them to dividends. As a matter of fact, none of the present surplus, amounting to about $5,000,000, has been voted by the board of directors to be distributed as dividends. In the absence of circumstances strongly indicating fraud, and there seem to be no circumstances of this nature urged here, surplus can only be ascertained to be available for the payment of dividends by action of the board of directors. I incline to the view, therefore, that from a dividend standpoint all of this one hundred and forty per cent. of arrears of dividends must be theoretically taken not to have been availably earned up to the present time. But the question in my mind is, is that sufficient to authorize the corporation to destroy the cumulative portion of the contract held by preferred stockholders in a retroactive way, so that not only is that cumulative provision modified as to the future (which is a risk which all investors in preferred stock not secured by express contractual provision undertake when they buy such preferred stock), but as to the past also? Can the rights of the preferred stockholders to receive compensation according to their contract, even though at some future time, for the period during which their money has already remained invested on the faith of that contract, be absolutely wiped out and destroyed? I find myself unable to adopt this view. In *Morris* v. *American Public Utilities Co., 122 Atl. Rep. 696,* the court of chancery of the State of Delaware, in an opinion by the chancellor (citing as authority for the proposition

opinions by Vice-Chancellor Emery in our court of chancery in *Pronick* v. *Spirits Distributing Co., 58 N. J. Eq. 97,* and *Colgate* v. *United States Leather Co., 73 N. J. Eq. 72,* as well as several New York cases), held : "While it is true that a holder of cumulative preferred stock is not a creditor of the corporation, so as to entitle him to bring suit at law against the corporation for dividends in arrear, but not declared [*American Steel Foundries Co.* v. *Lazear, 204 Fed. Rep. 204*], yet, considering the relations of the stockholders *inter sese* in such a case as the instant one, there is every reason to hold that, as soon as the accrued dividend which the preferred stockholder is to receive is matured by time, a right to its ultimate payment as against those who have agreed to its payment becomes a vested right. It is a present property interest. The period of its enjoyment may be deferred by the directors of the corporation in the legitimate exercise of their discretion in the management of the corporate affairs, and thereby the privilege of asserting the right to the dividend in a suit or action may be postponed. This, however, does not in anywise impair the status of the preferred stockholder as the owner of a present right against the corporation, assertable upon the arising of the proper contingency, namely, when the earnings are such as to justify the declaration of a dividend. Nor is the fact that the preferred stockholder may be required to await the contingency of adequate earnings sufficient to deprive him of the right to be recorded in substance as a creditor as against the common stockholders."

It seems to me, therefore, that as to the accrued unpaid dividends upon the preferred stock up to the present time, complainants cannot be deprived of their vested present property right to have those dividends paid to them at some future time out of earnings of the corporation before the payment of any dividends which did not have priority over them at the time they from time to time matured.

But does this view invalidate the proposed action of this corporation to which complainants are now objecting? I am

inclined to think that it does not. As to future accruing dividends, the dividends of the prior preference stock about to be issued will, of course, have preference, but, as above stated, I think there is nothing illegal in that. As to dividends already accrued, however, my view is that the dividends on the new prior preference stock will not have preference over them, and that, therefore, the carrying out of the plan does not, in itself, overturn the vested rights to these back dividends of the complainants. Those vested rights will not be invaded until, as it seems to me, there shall be an attempt to pay dividends either to these prior preference stockholders or to the common stockholders before the present matured and unpaid dividends on the preferred stock of complainants shall have been paid. When that occurs, if it ever does occur, I shall be inclined to think that, as in *Day* v. *United States Pipe Co., 95 N. J. Eq. 389; 96 N. J. Eq. 736,* such action could be enjoined.

I am requested by Mr. Justice Katzenbach to say that he concurs in the views herein expressed.

BLACK, J. (dissenting).

The fundamental question involved in this appeal is whether, under the Corporation act, cumulative prior preference stock, carrying eight per cent. dividend redeemable at $115 per share, can be created and issued ahead of already outstanding cumulative preferred stock? The defendant company, in its certificate of incorporation dated May 3d, 1899, created two kinds of stock, common and preferred. The preferred stock has a preference. It is made cumulative.

Liquidation is to be paid in full both as to principal and accrued dividends, and after the common stock is paid at par, the balance of the assets shall be divided *pro rata* among the holders of both classes of stock.

The Corporation act (*P. L. 1896 p. 283 § 18; 2 Comp. Stat. of N. J. p. 1608*) provides, "every corporation shall have power to create two or more kinds of stock of such classes," as shall be stated and expressed in the certificate

of incorporation. Section 27 provides that the corporation may change the nature of its business, extend its corporate existence, &c., "create one or more classes of preferred stock," &c. *P. L. 1901 p. 245,* added the words "or in any certificate of amendment thereof." *P. L. 1908 p. 128,* inserted in section 27 the words, "change its common stock into one or more classes of preferred stock," before the words, "create one or more classes of preferred stock." Section 29 provides, "the decrease of capital stock may be effected by retiring or reducing any class of stock." From the words thus used in the twenty-seventh section of the statute, "create one or more classes of preferred stock," power is found by the court for creating cumulative prior preference stock ahead of preferred cumulative stock already created, issued and outstanding. These sections should be read together. They contemplate a complete scheme for creating common and preferred stock.

The words in section 18, "every corporation shall have power to create two or more kinds of such stock," are precise and apt words for the creation of different kinds of stock, where none has been created. The words in section 27, "create one or more classes of preferred stock," are likewise precise and apt words for the creation of preferred stock, where none of that class has already been created. Thus read, the construction of the two sections are harmonious. A power to set cumulative preference stock over already created and outstanding cumulative preferred stock, if it exists. should be expressed in such clear and precise language that the man on the street may know what he is buying, and that he will not be misled. If there is doubt whether such power has been granted from the words of the statute it ought to be denied. Such a power ought not to be interpolated into the statute by implication or by judicial construction. These provisions in the statute limit a corporation to a classification of its preferred stock once and for all time. They should not be construed as though they read change the common stock and create additional classes of

prior preferred stock, unless there can be no other legitimate construction. A critical examination of the words of the statute leads to the same conclusion.

The word "preferred," standing alone, means first in rank, to set above something else, having the first claim, it has some advantage over another thing of the same character. It should not be construed to mean secondary, if so, the expression is pertinent. If such a power exists, it seems to me, it must rest upon the notion that words have no settled meaning or that language is powerless to express thought.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, MINTURN, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, KAYS, JJ. 9.

*For reversal*—BLACK, CLARK, McGLENNON, JJ. 3.