The bill is by two of the beneficiaries named in the will of William Gonley, deceased, and seeks the construction of the codicil thereto. The will was executed on November 23d 1931, and the codicil on December 7th, 1931. The testator died the next day. The codicil reads as follows:
"I do hereby revoke the Third Provision of my will wherein I did bequeath my business interest in the `G.M.C. Trucking Company, and I do now give and bequeath to my executor all money which I have invested in the trucking business, known as the G.M.C. Trucking Company, together with any interest, financial or otherwise, I have in accounts outstanding and owing to the said business, which interest I do order my Executor to hold until George L. Clausen, Albert Clausen and Edward Mount shall form a corporation known as the G.M.C. Trucking Company, or other name unanimously agreed upon by them, in which corporation the persons named shall all have an equal interest. The corporation shall be formed by my counsel, Walter A. Beers, and he shall provide for by-laws and regulations so that the unanimous consent of the three persons named shall be required on all important policies of the corporation, if legal, a unanimous consent of the persons named for the election of officers and directors, and such provision as he shall deem to the interest of the parties concerned. I direct that he make every provision possible to prevent the possibility of any two members obtaining any advantage over any third member. My counsel's decision shall be final in preparing the by-laws and other rules and regulations of said corporation.
"After the organization of said corporation, the election of officers and the adoption of by-laws as prepared by my counsel, and the issuing of an equal number of shares to each of the three persons named, I order and direct my Executor to transfer all his right, title and interest as such Executor to the said corporation, in the partnership business which I have given to him under this provision of my will.
"Should either George Clausen or Albert Clausen refuse to organize the said corporation, so that Edward Mount shall have an equal interest with them in the said business without any possibility of eliminating him from the active management and equal say in the operation of the business at any time in the future without his written consent, and should they refuse to form the corporation with by-laws, rules and regulations as provided for by my counsel, then and in that event, I do order and direct my Executor to transfer all money *Page 326 
which I have invested in the present G.M.C. Trucking Company business, together with my share of the good-will accounts outstanding, and any interest whatever I have in said business, to Edward Mount. The interest, however, shall not be assigned to Edward Mount until a period of four months after my decease, within which time the said George Clausen and Albert Clausen can determine whether or not they shall form the corporation named.
"It is my further will, that in the event my estate is insufficient to pay all the personal bequests therein mentioned, that the money I have invested in the G.M.C. Trucking Company shall first be used to pay the shortage up to the sum of $2,000, and thereafter, the shortage shall be made up in the order as mentioned in the Ninth and Tenth Provisions of my will.
"I hereby ratify and confirm my last will and testament referred to in all other respects."
The following is a copy of the "third provision" of the will referred to in the codicil:
"Third. I give and bequeath to my friends associated in business with me, George L. Clausen, Albert Clausen and Edward Mount, all money which I have invested in the trucking business now conducted by the said persons and myself under the name `G.M.C. Trucking Company,' together with my share of the good-will accounts outstanding and owing to the `G.M.C. Trucking Company' and any interest whatsoever I have in the business of `G.M.C. Trucking Company:' the said persons named to share the interest equally share and share alike."
The four-month period fixed by the codicil and within which the complainants had to decide whether they would form the corporation expired on April 8th, 1932. Two days before that date they sent the following communication to Mr. Mount:
"We hereby notify you that we cannot give our consent to the formation of the corporation mentioned in the codicil dated December 7th, 1931, to the last will and testament of William Gonley, for the reason that the codicil and provisons thereof are invalid and contrary to the laws of the State of New Jersey."
Why it was sent to Mount instead of to the executor does not appear.
The position now taken by the complainants is that they are not refusing to perform the conditions precedent named *Page 327 
in the codicil but that they cannot do so because the formation of such a corporation as prescribed by the testator would be violative of the Corporation act of this state. That is not the position taken when the bill was filed as the bill alleges that the whole codicil is invalid and complainants assert their right to take under the third paragraph of the will above quoted. One of the prayers of the bill is, however, that the codicil be construed and the complainants' rights thereunder declared.
The questions presented are whether the testator has imposed conditions precedent which must be performed before the legacy can vest, and whether, because of the invalidity of certain of the conditions precedent, it is impossible for the legatees to take the gift.
It is undoubtedly the general rule that a devise or a bequest upon a condition precedent does not become effective until the condition is performed; it being the essence of the disposition that it shall not become operative until the condition precedent is fulfilled. Den, ex dem. Blean v. Messenger,33 N.J. Law 499; 2 Jarm. Wills (5th ed.) 2; 2 Alex. Wills § 1035. In this respect it is distinguished from a condition subsequent wherein the devise or bequest vests immediately upon the death of the testator, subject to being defeated upon a breach of the condition. Ibid.
Because of this strict rule of the common law, courts are averse to construing conditions to be precedent where they might defeat the vesting of estates under a will. Pennington v.Pennington (Court of Appeals of Maryland), 70 Md. 418;17 Atl. Rep. 329.
A distinction was made in the civil law and in the English ecclesiastical courts between devises which were dependent upon conditions precedent and bequests so made, where the conditions were invalid or impossible of performance. It was held by those courts that as to realty a condition precedent must be performed in order that the devise may vest, and if the condition is impossible of performance or illegal the devise is void. As to personalty, it was held that the impossibility or illegality of a condition precedent would not defeat the *Page 328 
vesting of the bequest unless the performance of the condition was the sole motive of the testator for making the gift. 40 Cyc.1694; 2 Jarm. Wills (5th ed.) 14.
In considering conditions it has been held that every presumption will be taken in favor of their validity and of the innocence of the testator, there being no presumption of illegality. Daboll v. Moon, 88 Conn. 387; Holbrook's Estate,213 Pa. St. 93.
The bequests contained in the codicil are undoubtedly subject to conditions precedent; and cannot vest until those conditions are performed. The performance can be accomplished, however, by a substantial adherence to the plan devised by the testator which will not transgress our Corporation act and which, at the same time, will not be a substituted scheme of bequest.
The will and codicil must be read together in order to determine the intention of the testator and effect should be given to every part, if possible. Thomas v. Scheible, 91 N.J. Eq. 451.
Even though the words are in the form of a condition precedent the general intention of the testator, as collected from the four corners of the instrument, if showing a different purpose, will prevail. Alex. Wills § 1037; Finlay v. King'sLessee, 28 U.S. 346; Wheeler v. Walker, 2 Conn. 196; Fox v.Phelps, 17 Wend. (N.Y.) 393; Barruso v. Madan, 2 Johns.
(N.Y.) 145.
There is no doubt that it was the intention of the testator that the two Clausens and Mount, who had been associated with him in the trucking business, should acquire all of his interest in that business. In his will, he bequeathed his share in the business to them without any condition or qualification. He repeated the bequest to them in the codicil. The substance of the gift was not changed; only the manner of enjoyment. It is evident that the testator was anxious to effect some arrangement whereby the three beneficiaries should remain in the business, and that the two Clausens should not be in a position to oust Mount. Unfortunately he directed that a corporation be organized in a manner which would violate the Corporation act of this state if his instructions *Page 329 
were literally performed. He provided that the unanimous consent of the three persons named be required on all important policies of the corporation; unanimous consent for the election of officers and directors; that Mount be given an equal interest with the two Clausens in the business without any possibility of eliminating him from the active management and equal say in the operation of the business at any time without his written consent; that his counsel should provide the by-laws, rules and regulations.
Our Corporation act provides, in section 17 (Cum. Supp. Comp.Stat. p. 270), that "in no case shall more than a majority of shares or amount of interest be required to be represented at any meeting in order to constitute a quorum;" and in section 12 (Cum. Supp. Comp. Stat. p. 269) "that directors are to be chosen annually by the stockholders." Also that a vote of two-thirds of the holders is sufficient for amendments of the certificate of incorporation, dissolution, merger, and other important corporate matters. Cum. Supp. Comp. Stat. p. 274 §27. A certificate or by-laws which would require unanimous vote on these matters would be subversive of the statute.
The testator's use of the words "if legal" in the body of the paragraph which contains the terms of the corporation to be organized and other provisions respecting the drafting of by-laws, c., by his lawyer, indicate clearly, I think, that he did not intend that the Clausens should consent to anything illegal as a condition of their enjoyment of the bequest. He desired to keep within the law and the conditions imposed were to become effective only if legal. It will not be assumed that he intended to violate any law and his express words negative any such idea. A literal compliance with the condition is not necessary where a substantial compliance will effectuate the intention of the testator. Trustees of Cory UniversalistSociety v. Beatty, 28 N.J. Eq. 570; Frost v. Blackwell,82 N.J. Eq. 184 (reversed, Ibid. 625, but this rule not questioned).
Assisted by the testator's own modification of the conditions precedent and the possibility thus afforded of moderating *Page 330 
his requirement of powers to be given to the stockholders and directors, it is not difficult to set up a plan of distribution which will approximate the objects which he sought to accomplish. It is entirely possible to incorporate a company under the laws of this state which will substantially carry out the testator's intention, making the division of the gift equal among the three beneficiaries, and yet dividing the power to control the new corporation so that Mount will always be afforded an equal say in the management and operation of the business without the possibility of being eliminated by the two Clausens.
That can be done by creating two classes of common stock, both having equal rights as to the profits of the company, but giving voting power to only one class. The stock can be divided so that Mount will have fifty per cent. of the voting stock and the two Clausens fifty per cent. and giving all of the non-voting stock to the Clausens. For instance, if the authorized capitalization were one hundred shares of the A, or voting stock, and fifty shares of the B, or non-voting stock; and if the A stock were divided so that the two Clausens received fifty shares and Mount fifty shares, and if all of the B stock were given to the Clausens, the result would be that each of the three persons named would own one-third of the common stock; but that the voting stock would be divided equally between the Clausens on the one hand and Mount on the other. With a board of directors consisting of four members, two nominated by the Clausens and two by Mount, the management of the business could be controlled by the two factions and Mount could not be eliminated.
I am mindful of the provision of the codicil to the effect that the testator's attorney should make "every provision possible to prevent the possibility of any two members obtaining any advantage over any third member;" and that under the plan herein suggested one of the Clausens may align himself with Mount and deprive the other of participating in the conduct of the business; but I think that the primary interest of the testator was to protect Mount from the other two.
A corporate organization of the kind herein outlined would *Page 331 
give effect to the real object and purpose of the testator as gathered from the will and codicil when read together. It is, of course, possible, and even probable, that a better plan can be devised, and if it is I shall be glad to have it submitted.
The defendant Mount contends that the Clausens have lost their right to elect to take the legacy because their election was not made within four months from the date of the testator's death. But I do not consider their notice to Mr. Mount that they cannot give their consent to the formation of the corporation mentioned in the codicil for the reason that the provisions thereof are invalid and contrary to laws of the State of New Jersey is a refusal in the sense contemplated by the testator. They are entitled to the benefit of a judicial construction and their application for a construction was made before the end of the four-month period.
I will advise a decree in accordance with these conclusions. *Page 332