[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 586 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 587 
Plaintiff, holding 90 out of the 3,500 outstanding shares of the common capital stock of the defendant 536 Broad Street Corporation, complains of a proposed special meeting of the company's stockholders and of the action contemplated to be taken thereat. That meeting was called by the secretary of the company for September 27, 1948, for the purpose of considering and acting upon a resolution of the company, adopted by the company's board of directors at its *Page 588 
meeting held on September 15, 1948. That resolution declares that it is advisable to amend the company's charter by deleting and excising therefrom paragraph or article Seventh which reads and provides as follows:
"Seventh. No real estate owned by the corporation may be leased, mortgaged, sold or exchanged, unless the Board of Directors shall at a properly called meeting adopt a resolution authorizing the officers to make such sale, lease, mortgage or exchange of the real estate of the corporation, and unless and until such resolution of the Board of Directors receives the approval in writing of the holders of not less than seventy-five per cent. (75%) of the stock of the company issued and outstanding at the time such resolution is adopted."
The proposed meeting has not been held due to the restraining order allowed by this court pending the trial of the action.
The main question posed for decision concerns the power of eliminating by amendment the quoted Seventh article from the company's certificate of incorporation, in which it is provided, amongst other things, that no real estate owned by the corporation may be leased unless its board of directors authorizes such lease and unless and until such action by the board receives the approval in writing of the holders of not less than 75% of the stock of the company issued and outstanding at the time the board's action is taken. The plaintiff contends that such amendment may not be made except by the unanimous action of all the stockholders, while in behalf of the defendants it is claimed that the charter provision in question is subject to the power of amendment provided for in the General Corporation Act and that in a conflict between the two, the prohibitory provision in the charter must yield to the statutory power of amendment. For the plaintiff it is insisted that the provision in question, present in the charter from its very inception, constitutes a contract between the company and its stockholders and by the stockholders inter sese, that the provision gives rise to vested rights, that these rights may not, in the absence of unanimous approval by the stockholders, be altered or impaired without violence to constitutional guarantees.
The court is not left to conjecture about the true basis of the controversy. The evidence taken at the trial frankly and *Page 589 
fully reveals divergent views concerning a lease proposed to be made by the company, as lessor, to the defendant Simon Ackerman Clothes, Inc., a New York corporation, as lessee. In fact, a copy of the proposed lease is in evidence, and it is frankly admitted by the defendants that Article Seventh of the company's certificate of incorporation is a present barrier to the execution of that lease and that the proposed amendment is designed to eliminate that charter obstacle.
It appears that the individual defendants together own or control 2,333 shares, while the plaintiff and other stockholders (not including any of the individual defendants) together own or control 1,167 shares. The pleadings were filed and the issues here framed on the assumption and assertion that one group (that of the individual defendants) owns two-thirds of the outstanding stock, while the plaintiff and other stockholders own or control together one-third of the stock. In fact, the plaintiff's brief contains the following statement: "By a coincidence 66 2/3% happens to be the percentage of the stock controlled by the Belfatto interests." The like statement appears in paragraph sixteen of plaintiff's complaint. However, at the opening of the trial counsel for the plaintiff pointed out to the court a fact which had come to his attention only the day before, namely: that the allegations of a one-third holding by one group and of two-thirds by the other group were mathematically inaccurate in that the individual defendants held less than 66 2/3%, while the plaintiff and other stockholders together held more than 33 1/3%. Mathematically examined, it would appear that the individual defendants are one-third of one share short of holding two-thirds of the outstanding stock. The evidence shows that when the stock of the company was originally issued, one-third thereof was to go to John Warren and his associates to compensate them for services in certain litigation in which they had professionally represented Mr. Fred M. Barnet under a contingent retainer agreement by which they were to receive one-third of the fruits of their professional effort. Plaintiff sought an amendment to the pleadings, so as to present with mathematical precision the true fractional *Page 590 
interests of the contending groups of stockholders. This was reserved, to be determined at the conclusion of the trial, and may now be disposed of. The amendment will be allowed, but there will be no finding or adjudication as to the true ownership of the one-third of one share of stock. Not all the stockholders appeared and answered in the action and it may well be suggested that those who failed to answer did so in reliance upon the allegations of ownership set forth in the pleadings. There may be equities affecting the ownership of that one-third of one share, in turn involving questions that were not here yet litigated. The court may not assume the result of the balloting should the present restraint be lifted and the meeting of stockholders permitted. It is entirely conceivable that those desiring the amendment may be able to muster more than the statutory two-thirds without taking into account the aforementioned one-third of one share. It is equally conceivable that the opposing group might muster more than one-third of the voting power without including the questioned one-third of one share. In either situation any dispute over that one-third of a share would be uninfluential and moot. For this reason the cause is undecided and reserved with respect to the said one-third of one share and the parties are given leave to make such amendments and frame such issues in respect thereof as they may desire. If that is done, those issues will be tried and disposed of at some time in the future. This disposition is not intended to arrest or delay the stockholders' meeting, with which matter I later deal.
Complaint is also made that the 536 Broad Street Corporation has refused to transfer upon its books Certificate No. 42, which was in the name of John Warren, trustee for plaintiff, and assigned and delivered by him to the plaintiff, and also refused to transfer Certificates Nos. 11, 15, 32, 33, 38, 39 and 41, issued for a total of 834 shares, transferred to Warack Corporation. The defendants in their answer admit the refusal to transfer those shares, claiming that the transfers are an attempt to avoid satisfaction of a large money decree obtained by the company against John Warren and *Page 591 
Valco Mortgage Co., Inc., entered in this court and affirmed on appeal. At the trial this court was informed that there are pending in this court a bill to review the said money decree and an action to compel the transfer of said shares of stock. In the within cause the court is asked to compel, by its judgment, the desired transfers of stock. That it must decline to do in this case. The matter has not been adequately litigated here and the question of the demand to transfer should be decided in the other pending cause when the issue there is properly raised and the dispute fully heard. Besides that, the controversy over the transfer of stock would have to abide the result of the pending bill for review. Were that action to result in a vacation of the money decree, the company's asserted justification for refusing a transfer of the stock might disappear. On the other hand, if the money decree remains undisturbed the existence of that decree as an unsatisfied award may justify the company's refusal to make the transfer. Because of the pendency of those other actions and because the issues there involved have not been properly raised herein and for the added reason that not all the parties necessary to a determination of those other questions are present in this action, there will here be no adjudication on those questions. The plaintiff and those constituting her group are not prejudiced by the company's present refusal to honor the transfers. The transferors remain the stockholders of record and are possessed of the voting power incidental to the transferred shares, and at the stockholders' meeting may vote those shares in accordance with their transferees' instructions. If it be thought that the company's refusal to honor the demanded transfers may possibly result in the plaintiff and her group having a cumulative voting power of less than one-third, that fact would be unimportant. The statutory test for the validity of the proposed amendment is a two-thirds vote in its favor, not the negative vote registered against the proposal. It is only thequantum of the affirmative vote that constitutes the statutory requirement and test.
Much proof was taken, including expert testimony, *Page 592 
on the asserted advantages and disadvantages of the proposed lease with Simon Ackerman Clothes, Inc. In the absence of any fraud on the part of the directors in the negotiation or procurement of the proposed lease, the court has no concern with the economic merits of the transaction. No such fraud is alleged or proved. The business policy of the proposed transaction is one that stands by law committed to the honest judgment of the directors and the court will not interfere with that judgment, exercised in good faith. It certainly will not intrude into the internal affairs of the company and substitute its own business judgment for that of the lawfully constituted business managers of the company. This is not to say that where, as here, the only asset of the company stands idle and untenanted for years, producing no income and being continuously subjected to deterioration and to a mounting burden of taxes and other carrying charges, the court will not step in where those deplorable conditions are due to an impasse either amongst the directors or stockholders. The risk of the devastating loss to the investors, majority and minority alike, would stir equity's arm to some remedial action. Such course might have to be taken in the future upon a proper showing. In the present posture of the controversy, the court is not inclined to act in that direction.
Now as to the principal question in the case. May stockholders holding two-third of the outstanding stock so amend the certificate of the company as to delete, excise and eliminate the Seventh paragraph thereof? If the answer is in the negative, then the proposed meeting should be permanently restrained; if in the affirmative, the meeting should be permitted and the plaintiff's complaint be dismissed in respect of the injunctive relief sought against the holding of the meeting and the amendment to be submitted thereat.
Of course, every corporate charter is a binding contract between the company and its stockholders and by the stockholdersinter sese. This principle has been settled by decisions in our own State, carrying the force of final authority. There is, however, another rule of law of transcendent force. It is to the effect that every corporate charter is *Page 593 
to be read and enforced with reference to and observance of the state of the law at the time of the granting of the charter, and that there is present in each charter by legal implication every right and power contained and expresed in the then prevailing statute applicable to such a corporation. The law existing at the time the charter is granted is as much a part of the charter itself as though that law were fully and explicitly stated in the charter, and every stockholder is presumed to have purchased his stock subject to the charter as so expanded. General Invest. Co.v. American Hide Leather Co., 97 N.J. Eq. 214, 127 A. 529; affirmed, 98 N.J. Eq. 326, 129 A. 244 (E. A.).
The 536 Broad Street Corporation was incorporated on February 2, 1927. In effect at that time was section 27 of the GeneralCorporation Act, as amended and supplemented by P.L. 1926,c. 318, § 7, p. 535, and reads as follows:
"Every corporation organized under this act may change the nature of its business * * * alter or amend existing provisions for the regulation of the management and affairs of the corporation, and make such other amendment, change or alteration as may be desired, in manner following: The board of directors shall pass a resolution declaring that such amendment, change or alteration is advisable and calling a meeting of the stockholders to take action thereon. The meeting shall be held upon such notice as the by-laws provide, and in the absence of such provision, upon ten days' notice, given personally or by mail; if two-thirds in interest of each class of the stockholders having voting powers shall vote in favor of such amendment, change or alteration, the corporation shall make a certificate thereof under its seal and the hands of its president or vice-president and its secretary or assistant secretary, which certificate shall be acknowledged or proved as in the case of deeds of real estate, and such certificate shall be filed in the office of the Secretary of State, and upon the filing of the same, the certificate of incorporation shall be deemed to be amended accordingly."
That law is now known as R.S. 14:11-1 and 2.
At the time the company was incorporated section 5 of theGeneral Corporation Act was in effect. It is now identified asR.S. 14:2-8 and reads as follows:
"14:2-8. Charter governed by provisions of title. This title and all its amendments shall be a part of the charter of every corporation heretofore or hereafter formed hereunder, except so far as the same are inapplicable and inappropriate to the objects of the corporation." *Page 594 
The two foregoing provisions control the question at bar. From the first of the quoted provisions it is plain that the Legislature conferred upon every corporation organized under the then existing law the power of amendment upon the resolution of the board of directors and the subsequent approval of two-thirds in interest of the stock having voting power. The language of the provision is of such sweep that there comes well within its operation the proposed amendment involved in the present suit. By the second of the said quoted provisions this power of amendment is declared by statute to be a part of the charter. Such holding is not inapplicable and inappropriate to the objects of the corporation.
It may quite accurately be said that at this time there are present two provisions in the charter which seemingly conflict. One is the Seventh article, calling for a minimum of 75% stock approval to any lease of the company's real estate. The other is the provision, present in the charter by legal implication, that the charter itself may be amended by a minimum two-thirds stock approval. If it were the fact that these two provisions conflict with one another, then the 75% vote requirement would have to yield to the transcendent force of the statutory power granted to the stockholders. Any provision conflicting with the statutory grant or reservation would be subversive of the statute and would be deemed illegal and unenforceable. As was said by this court inClausen v. Leary, 113 N.J. Eq. 324, 166 A. 623 (Ch.
1933), any certificate of incorporation or by-law requiring unanimous vote on the amendment of the certificate of incorporation would be subversive of the statute in view of the provision that a two-thirds vote is sufficient under the statute. There is, however, no conflict present in the company's charter. What the incorporators said in legal effect, when they included the Seventh Article in the certificate, is that the article shall be binding so long as it remains unamended by the means and manner provided in the statute itself. The Seventh Article is binding at the present time and the proposed lease may not be achieved and concluded at this time without the required approval of 75% of the voting stock. But this is not to say that that condition *Page 595 
is perpetually rigid and unalterable. The statute permits the change, and the change may be either an increase or reduction in the required vote of approval or a complete elimination of it.
It is argued that the proposed amendment will work injury to the plaintiff and her group of stockholders, since the amendment will deprive them of a certain voting power originally and at all times intended for their protection. This may be true, but that circumstance does not impair the statutory power of amendment. InGeneral Invest. Co. v. American Hide Leather Co., supra, it was stated by the Court of Errors and Appeals that even injury to the objecting stockholder cannot operate to nullify a corporate power conferred by statute and that "The power thus conferred is only curtailed by those other provisions of the statute which declare the limits beyond which the corporation may not go in issuing such new stock." And that "the power thus broadly conferred by the Legislature is not to be limited by judicial decision." See, also, Franzblau v. Capital Securities Co.,2 N.J. Super. 517, 64 A.2d 644 (Super. Ct. 1949).
It is concluded that the proposed amendment may be sought by the defendants and that it will be binding and effective if obtained in the manner provided for in R.S. 14:11-2.
It appears that section 6 of article 1 of the company's by-laws is the same as the Seventh Article of the company's certificate of incorporation. Article 5 of the by-laws provides that they may be altered or amended at any time by the entire board of directors or by a vote of the majority of the board at a meeting held for that purpose. Such meeting was held by the directors on September 15, 1948, where, by a majority vote, the by-law calling for a 75% stockholder approval was deleted. This action was within the express power of the board and the court perceives no reason why that action should be disapproved or disturbed. This is not to say that the mere elimination by the directors of the particular by-law eliminates the necessity for 75% stockholder approval to the proposed lease. That necessity exists independently by reason of the provisions of the charter, but, as has already been *Page 596 
pointed out, the charter provision itself is subject to deletion by the stockholders by the exercise of their statutory right and power of amendment.
The court perceives no need to discuss other incidental questions argued in the briefs of counsel.
A judgment for the defendants may be presented in accordance with the foregoing conclusions. There is no just reason for delaying the same in respect of those other matters or claims in dispute which have hereinabove been reserved for future consideration and determination.