## LOUIS PRONICK

### v.

## SPIRITS DISTRIBUTING COMPANY.

[Filed February 17th, 1899.]

1. Corporations are authorized by statute to issue common and preferred stock, which provides that the holders of the latter shall be entitled to receive a fixed yearly dividend, to be expressed in the certificate. Pursuant to its certificate of incorporation, which authorized it to issue preferred stock entitled to a certain dividend, if earned, without reservation of any right of the stockholders to modify such provisions, a corporation issued certificates of preferred stock, entitling the holders to the dividends named in the certificate of incorporation without reservation.—*Held*, that the certificate of incorporation constituted a contract between the stockholders, and the certificate of shares a contract between the stockholders and the company, entitling the holder to the dividend named in the certificate, which could not be reduced without his consent.

2. The statute authorizing a corporation, with the assent of a majority in interest of its stockholders, to amend its certificate of incorporation as of date of the recording and filing of the original, does not authorize a corporation to reduce the rate of dividend expressed in a preferred stock certificate, where the company reserved no power either in its certificate of incorporation or the certificate of stock to change such rate, since such alteration would impair the obligation of the contract with the stockholder.

3. Where a corporation made an agreement with another by which the former was to reduce the dividends payable on its preferred stock, and the latter was to pay such reduced dividend direct to the stockholders, the alteration of the certificate of incorporation of the former so as to provide for such reduced dividend will be enjoined at the instance of a non-assenting holder of preferred stock, since his legal remedy would be inadequate.

On bill for injunction. Heard on bill and affidavits and answering affidavits.

*Mr. Richard V. Lindabury, Mr. James E. Howell* and *Mr. Curtis* (of the New York bar), for application.

*Mr. William H. Corbin, Mr. Wickersham* (of the New York bar), and *Mr. Hogan* (of the Chicago bar), *contra*.

EMERY, V. C.

The complainant is the holder of preferred stock in the defendant company, and seeks to enjoin the alteration of the organization certificate of the company, under which his stock was issued. The alteration is proposed to be made at a meeting of the stockholders specially called for the purpose, and it has already been consented to by the holders of more than two-thirds of all the stock issued by the company, common as well as preferred, the consenting stockholders having deposited their stock with a trustee who is authorized to represent them at the meeting and amend the certificate. The amendment proposed is the reduction of the rates of dividend now fixed in the certificates of stock held by complainant from seven per cent. to six on the first preferred stock, and from six per cent. to two on the second preferred. The seven per cent. dividend on the first preferred stock has always been paid hitherto, but no dividend has yet been paid on the second preferred. The preferred stock of complainant was issued under the law then in force, the statute of May 9th, 1889 (*P. L. of 1889 p. 412; Gen. Stat. p. 951 pl. 212*), which authorized companies to create and issue certificates of two kinds of stock, general and preferred, which preferred stock might be made subject to redemption at par at a fixed time to be expressed in the certificate. The statute further provides " that the holders of such preferred stock shall be entitled to receive and the said company shall be bound to pay thereon a fixed yearly dividend to be expressed in the certificate, not exceeding eight per cent. per annum, * * * before any dividend shall be set apart or payable on the common stock." And it was further declared that unless otherwise provided in the organization certificate, the preferred stock should not be created or certificates therefor issued except by authority to the board of directors, given by a two-thirds vote of the stockholders at a meeting called for the purpose.

In the present case the original certificate of incorporation authorized the creation and issuing of two classes of preferred stock, the first preferred providing for seven per cent. cumulative dividends and the second preferred, six per cent. non-cumu-

lative dividends, with an ultimate participation in further divi-
dends along with the common stock.   In reference to the point
now in question, the organization certificate declared that the
holders of the first preferred stock

"shall be entitled to a cumulative dividend in each year, of an amount equal
to seven per cent. upon the amount actually paid in on said stock, payable
from profits, if earned, and which shares, both as to dividends and as to the
distributive share of the assets of the dissolution or winding up of the com-
pany, shall have preference over the common stock and over any other stock
at any time issued,"

and also declared that

"the holders of the second preferred stock shall be entitled to a non-cumu-
lative dividend not to exceed six per cent. in any year, payable from profits
after the payment of all accumulated dividends on the first preferred stock
and before the payment of any dividend on the common stock."

There is no express reservation in the certificate of any right
in the stockholders to alter, amend or modify these provisions.
Certificates for this preferred stock (first and second) were issued
pursuant to these provisions of the organization certificate, and
the certificates of stock, which were signed by the company and
delivered to the stockholders themselves, contain the same pro-
vision as to the rights of the holders of the preferred stock as
is contained in the organization certificate, and they do not con-
tain any reservation of right in the company to alter, amend or
modify the amount of dividends payable.   It will be observed,
therefore, that the statutes in force when this company was
organized and these certificates were issued expressly provided
for an organization certificate authorizing the issuing of certifi-
cates of preferred stock, and also for the insertion in the stock
certificate to be issued by the company under this authority, of
the time for redemption (if any were fixed) and of the fixed
yearly dividend.   As to the rights of the preferred stockholders
and the company upon such certificates so authorized and issued,
the statute then provided that "the holders of such preferred
stock shall be entitled to receive, and the company shall be
bound to pay thereon, the fixed yearly dividend expressed in
the certificate," &c.

By this method of providing for the issue of preferred stock there is a contract not only between the stockholders themselves, under the organization certificate, but a contract in addition between the stockholder and the company, created by the certificate itself, as to all those matters, which the statute directs to be expressly determined by the certificate. When this contract is so issued under the statute and contains the provisions as to rate of dividend, which the statute expressly authorizes the holder to receive and obliges the company to pay, a direct obligation or contract between the stockholder and the company, as to the rate of dividend, is created which cannot be altered without his consent unless the right to do so has been expressly reserved.

The company was organized January 4th, 1896, and the statute then in force, act March 21st, 1893 (*P. L. of 1893 p. 444* § *6; Gen. Stat. p. 964*), authorized corporations, with the assent of a majority in interest of the stockholders, to "amend its original certificate," and provided that "such amended certificate shall take the place of the original certificate of incorporation and shall be deemed to have been recorded and filed on the date of the recording and filing of the original certificate."

These provisions as to amendments are, under our decisions, to be regarded as incorporated into the original certificates of corporations subsequently organized, and are relied on by the company as authorizing the amendments now proposed. In my judgment these general powers of amendment of the certificate, which originally fixed the relation between the stockholders *inter sese*, do not confer the power of altering the previous contract of the company itself with the stockholders, as to the rate of dividend which was created by a stock certificate, or contract of the company, which was required by the statute to express this rate of dividend, and which reserved no power in the company to change. Such alteration would impair the obligation of the contract created by the stock certificate issued under the company's charter.

I express no opinion upon the question whether there is power under our statutes to amend an original certificate which provides only for common stock, by creating an issue of preferred

stock under a statute subsequent to the organization. On this point the decisions which have been cited in the argument show that courts differ. But I have not been referred to any case which supports the doctrine that an alteration such as is now proposed of the rate of dividends on preferred stock issued under statutes similar to ours can be made without the stockholders' consent. The company, therefore, should be enjoined until final hearing from making the alteration, unless the complainant's rights, under his stock certificate, can be protected otherwise. *Black* v. *Canal Co.*, *9 C. E. Gr. 455 (Errors and Appeals, 1873); Zabriskie* v. *Railroad Co., 3 C. E. Gr. 178 (Zabriskie, Chancellor, 1867); Elkins* v. *Railroad Co., 9 Stew. Eq. 5 (Runyon, Chancellor, 1882).* At the argument of the motion it did not seem clear to me that a suit at law for the dividend to which the stock certificate entitled him on the first preferred stock when a dividend was declared by the company would not give all the relief to which complainant was entitled. This might be the situation if the case showed that the defendant company in future would declare and distribute dividends directly among its stockholders. But upon examining the change proposed to be made in relation to the dividend, and the mode in which it is to be practically carried out, it appears by the contract under which the stock is deposited for the purpose of securing the amendment of the certificate that the reduced dividend to be paid on the stock is not a dividend to be paid by the Standard Distilling and Distributing Company to the defendant company for the purpose of distributing among its shareholders, but is practically a plan for the payment of the dividend expressed in the certificate by the Standard company directly to the stockholders of the defendant company under the obligation of its guarantee. This seems to be the true intent and practical effect of the contract and proceedings for amendment, so far as they are now disclosed by the affidavits, and this situation entitles the complainant, pending the hearing, to the preservation of the present *status* of his stock by a preliminary injunction. The preliminary injunction should also restrain any abrogation or modification of the contract between the de-

fendant company and the Spirits Manufacturing Company set out in the bill, the consideration of which abrogation or modification is either wholly or in part the amendment of the certificate which is now enjoined. Such restraint is also necessary under the circumstances of this case to preserve the *status* of complainant's rights under his certificate until the hearing. The power to modify or rescind the contract, which either the company, its directors or stockholders may have the right to exercise, upon other considerations and for other purposes, is not now a subject for consideration.