WILLIAM R. WILLCOX et al.

*v.*

THE TRENTON POTTERIES COMPANY et al.

[Filed November 26th, 1902.]

1. A corporation entered into an agreement with another for the substitution of non-cumulative for cumulative dividend-paying preferred stock and the funding of dividends in arrears. The agreement provided that the corporation should issue to each assenting holder of preferred stock a funding certificate for the arrears, which should carry interest at four per cent. per annum, payable exclusively out of the net profits of the corporation for the year, and should not be cumulative, and should be payable in priority to any dividends on the capital stock for the year. —*Held*, that the agreement did not provide that the interest fund should be made a first charge on all the earnings to the exclusion of non-assenting holders of preferred stock, and, if the corporation made provision for the payment of such interest, it would be required to pay a like amount to such non-assenting holders.

2. The court, at the suit of a non-assenting holder of preferred stock, will not issue a temporary injunction restraining the corporation from carrying the agreement into effect, for no irreparable injury will result to him. If, after the consummation of the agreement, an attempt is made to pay dividends to assenting holders of preferred stock in preference to non-assenting, the latter can assert their rights by a proceeding in court.

3. The court, at the suit of non-assenting holders of common stock, will not issue a temporary injunction restraining the corporation from carrying the agreement into effect, as it works to their benefit in that it accelerates their chances of participation in dividends.

*Mr. Halsey M. Barrett,* for the complainants.

*Mr. Richard V. Lindabury* and *Mr. John W. Griggs,* for the defendants.

STEVENS, V. C.

This is an application for a preliminary injunction to restrain the Trenton Potteries Company from carrying into effect an agreement for funding arrears of dividends on preferred stock and for exchange of stock certificates. The Trenton Potteries Company filed its certificate of organization on May 29th, 1892. The certificate authorizes the issue of preferred stock to the amount of twelve thousand five hundred shares and of common stock to the amount of seventeen thousand five hundred shares. It provided that the holders of preferred stock should be entitled to receive, and the company should be bound to pay, a yearly cumulative dividend of eight per cent., payable quarterly, from surplus or net profits, before any dividend should be set apart or paid on common stock. All this stock was issued.

Shortly prior to July 1st, 1902, an agreement was entered into between the Trust Company of the Republic, on behalf of the holders of preferred and common stock, and the Trenton Potteries Company, having for its general object the substitution of non-cumulative for cumulative dividend-paying preferred stock, and the funding of dividends in arrears. The agreement was to be carried into effect by an amendment to the certificate of incorporation and of the by-laws, and by the surrender by the ratifying stockholders of their stock certificates in exchange for new ones conforming to the provisions of the agreement. The amendment received the assent of more than two-thirds in interest of each class of stockholders. The objecting complainants, one of whom is a preferred stockholder and three of whom are common stockholders, did not consent and did not attend the meeting at which the amendment was adopted.

The amendment to the certificate of incorporation contains this clause:

Willcox *v.* Trenton Potteries Co.

"The holders of said preferred stock shall be entitled to receive, and the company shall be bound to pay thereon, a yearly cumulative dividend of eight per centum, payable quarterly, from surplus or net profits arising from the business of the company before any dividends shall be set apart or paid on the common stock; provided, however, that the dividends on the preferred stock held by such shareholders, their successors in title and assigns, who have ratified or shall ratify a certain agreement (the agreement in question)  *  *  *  a copy of which agreement is hereto attached and made part of this certificate shall, from and after the said 1st day of July, 1902, be non-cumulative."

The agreement provides, in paragraph 6, that

"this agreement is intended to bind all the stockholders of the company who shall ratify the same and their shares of stock, and, also, their respective successors in title."

The complainants base their application largely upon the decision in *Pronick* v. *Spirits Distributing Co., 13 Dick. Ch. Rep. 97.* But that case differs from the present one in this vital particular: There it was sought, by an amended certificate, to reduce the dividend on all the preferred stock against the will of non-assenting stockholders. Here both the amendment and the agreement, in explicit language, provide that the proposed change shall operate only upon those who consent; consequently the contract of the complainant Willcox, contained in his stock certificate, remains unchanged.

If the agreement is unlawful, it must be, not because it is attempted to change the contract, but because it is sought to divert the surplus. The insistment, on this head, is that the agreement gives an exclusive benefit to those who ratify, by allowing them interest on the funded dividends and making this interest a first charge upon the net earnings.

The clauses objected to read as follows:

"Whereas, Owing to various causes the company for several years, and on the several dividend days therein, to wit, from September 10th, 1894, to December 10th, 1899, both inclusive, had no profits with which to pay dividends to its shareholders, in consequence whereof the dividends on said preferred stock have fallen into arrears so that the arrears now due, in respect of the dividends on such preferred shares, amount to $550,000, being forty-four per cent. of the par value of such preferred shares.

"Now therefore, the company shall, when this agreement becomes binding, * * * issue to each holder of preferred stock who shall have ratified this agreement a funding certificate or certificates in the form hereto attached for so much of the arrears of $550,000 aforesaid as shall be owing in respect to the preferred stock held by him.

"(2) The principal sum specified in each such certificate shall carry interest at the rate of four per cent. per annum, but such interest as regards each year shall be payable exclusively out of the net profits of the company of that year and shall not be cumulative. Such interest shall be payable in priority to any dividend on the capital stock for such year."

Two questions arise: (1) Does the agreement, in fact, provide that the interest fund shall be made a first charge upon all the net earnings? (2) If it does, is the complainant Willcox entitled to a preliminary injunction to restrain its execution?

The agreement, on first reading, seems to make the four per cent. interest payment a first charge. This is not so clear on further consideration. It is drawn upon the assumption that all the stockholders will agree to it. It is, in terms, a contract between the potteries company and the trust company, "on behalf of the holders of preferred stock and the holders of the common stock"—a description broad enough to include all the holders of both classes of stock. But the trust company could, as a matter of fact, only become the agent or trustee of those who assented; and its benefits and obligations are, in paragraph 5, expressly limited to these. It must, then, be read in this sense. So reading it, the words "capital stock" in that clause of paragraph 2, which declares that "such interest shall be payable in priority to any dividends on the capital stock for such year," would merely refer to the capital stock of those who assented. This construction is greatly fortified by the following considerations:

The "interest" referred to in paragraph 2 is interest on unpaid dividends. It is not payable at all events, but only out of net profits. It is not even payable out of net profits generally, but, in the words of the agreement, "interest as regards each year shall be payable exclusively out of the net profits of that year and shall not be cumulative." So that what is really meant is not interest, properly so called, but a dividend on funding certificates. Nothing is better settled in the books than the

distinction between interest chargeable upon all the assets and arising out of the forbearance of a debt, and dividends payable out of earnings. We must regard, not the names of things, but their substance. If the four per cent. payment is a dividend, it is plain that it cannot be made to *some* of the class of preferred stockholders to the exclusion of others. This is the language of all the cases. *Andrews* v. *Gas Meter Co., 1 L. R. Ch. 361 (1897)*, is not a case to the contrary. It was there held, on appeal (overruling *Hutton* v. *Scarborough Cliff Hotel Co., 2 Drew. & S. 514,* and the decision below), that a limited company, having no authority under its memorandum or articles of association to create any preference between different classes of shares, may, by special resolution, alter its articles so as to authorize the directors to issue preference shares by way of increase of capital. This only goes to the extent of deciding that where, by the memorandum of association, it is provided that the capital shall be divided into shares, "with power to increase the capital, as provided by the articles of association," the capital can be increased by the creation of a new class of preferred shareholders, who shall take in priority to the classes originally constituted. It is open to doubt whether this decision is in accord with the weight of authority in this country (see *2 Thomp. Corp.* § *2244*); but its *rationale* is as follows: A general power to issue stock, authorized by the Companies' act and given by the memorandum of association, includes a power to divide the stock into classes, and to divide them into classes, not merely at the outset, but at any time. On this construction of the language of the memorandum, and because the terms of that instrument entered into every contract, express or implied, which the company might make with its stockholders, it was held to follow, as a logical consequence, that it was no breach of the original contract to provide for the formation of a new class of shareholders, to which might be given a preference over the other classes then *in esse,* whether common or preferred. But it is evident this is a very different thing from asserting that, as between members of an already existing class, whose contract is equality *inter sese,* the company may subsequently, and without any *reservation of power in the first instance,* vary their rights

at pleasure. I have been referred to no case which so holds, and I doubt very much whether any such case can be found. In *Allen* v. *Gold Reef Co., 1 L. R. Ch. 656 (1900)*, it was merely held that the company had power to extend its lien for indebtedness to shares already issued and full paid.

I think it plain, therefore, that if the potteries company are going to provide for the payment of a dividend to some of the members of the class of preferred stockholders, they must provide a like dividend for other members of the same class.

The agreement in the case at bar does not, in terms, deny to the non-assenting stockholders participation in any dividend. It does declare that it shall bond only those who ratify. The rights of those who do not ratify are not, in anywise, alluded to. But one of those rights, and that, perhaps, the most valuable, is that the preferred stockholders shall share equally in the surplus earnings. To hold that this right has been taken away by doubtful implication would be unwarranted.

There is another consideration leading to the same conclusion. In *Andrews* v. *Gas Meter Co., supra,* the company had power, under the Companies' act, to alter its articles of association. It was in the exercise of this power that a new class of shareholders was created, and even in this way difficulty was felt in conceding that a preference could be given. In the case at bar no attempt is made, by the amended certificate, to give the power to prefer part of the class of preferred stockholders to another part in the payment of dividends. All that is there authorized is that dividends on the preferred stock shall, as to those who consent, be, after July 1st, 1902, non-cumulative. It is quite impossible to attribute to an agreement, in terms binding only on those who assent, the same force and effect that was, in the English case, given to an amendment to the articles made in the manner authorized by the Companies' act and, in terms, binding on all.

I think, therefore, that the agreement must be read in the light of well-established legal rules, and that, so read, it is not to be construed as providing for an unequal distribution of the surplus earnings among the preferred stockholders; and that it will be the duty of the directors, when out of net earnings

they set aside a sum equal to four per cent. of the funding certificates, to set aside, apart, a proportionate sum, whether that sum be called interest or dividend, for the benefit of those who do not assent.

But if the agreement should be read as an attempt to vary the rights of non-assenting stockholders, it does not follow that an injunction should issue restraining the consummation of the scheme. The amendment of article third is, as I have said, unobjectionable. The proposed plan, formulated in the agreement, is manifestly beneficial to the company, and is desired 'by the great majority of its shareholders, common and preferred. No irreparable injury can result to the complainant Willcox if it be carried into effect. If, after it has been consummated, any attempt is made to pay dividends to the other preferred shareholders, in preference to himself, he can easily, by a proper proceeding in this court, assert his legal right to a proportionate share, notwithstanding the provisions of the agreement, if it shall be read as denying his rights.

As to the objection taken to the scheme by the common stockholders, it seems to be quite untenable. It is manifestly for their benefit that the preferred stockholders should waive their right to the immediate payment of the dividends that have accumulated in the past and their right to all cumulative dividends in the future in consideration of a small reservation out of the earnings for a redemption fund and of a small payment thereout of interest, so called, both reservation and interest being non-cumulative and being given in lieu of the company's obligation immediately to pay, out of all surplus earnings, all past dividends.

This works to the benefit of the common stockholders, in that it greatly accelerates their chances of participation in dividends, by postponing the payment of the considerable sum of $550,000, which is no longer an immediate and prior charge upon all surplus earnings. If the earnings in any one year exceed the eight per cent. dividend due the preferred stockholders for that year and the two above-mentioned items, amounting together to less than $50,000 per annum, the directors will be able to devote the excess to the payment of a dividend to the common stockholders,

discharged of their obligation to make up dividends in arrears. It is hard to understand how such an arrangement can be an irreparable injury to common stockholders—an injury which calls for the immediate interposition of this court by preliminary injunction. If illegal, its illegality is not apparent. The case, on this branch of it, comes within the familiar rule of the *Citizens Coach Co.* v. *Camden Horse Railroad Co., 2 Stew. Eq. 299.*