An order was issued requiring the defendant to show cause why its plan for recapitalization and an amendment of its certificate of incorporation should not be restrained.
The defendant company proposed amending its certificate of incorporation as follows:
"A. Increase the present capitalization from $20,000,000 to $35,110,170, divided as follows:
 "1. 102,361 shares of 5 1/2% convertible preferred stock, par $100, to be issued only in exchange for the present 7% preferred stock.
 "2. 78,938 shares of 7% preferred stock, par $100, which upon exchange for the 5 1/2% stock shall be canceled and not reissued.
 "3. 1,698,027 shares of common stock, par value $10.
"B. The 7% preferred stock with the right to accumulated dividends in the amount of $54.50 per share is to be exchangeable for 1 4/10 shares of the 5 1/2% preferred stock and $14.50 in cash. *Page 323 
"C. The 5 1/2% preferred stock, besides the change in dividend rate, will differ from the present 7% preferred stock in that (1) it can be redeemed by the company at a price of $115 per share, plus accrued or unpaid dividends thereon, and (2) it may be converted into common stock at the rate of 7 shares of common stock for 1 of preferred.
"D. No part of the dividends accrued to July 1st, 1940, on the 7% preferred stock can be paid until after dividends payable upon the 7% preferred stock and the 5 1/2% preferred stock accrued after July 1st, 1940, and for the current fiscal year have been paid or provided for."
It is the contention of the complainants that the defendant's plan of reorganization and amendment of its corporate certificate is inequitable, unfair and contrary to law, and that the object of the plan is to confiscate and take the property of complainants, who are preferred stockholders, and other preferred stockholders, for the benefit of the holders of the common stock; that the plan affects the vested rights of the complainants and preferred stockholders, and reduces the value of their shares and their proportionate interest in the assets of the defendant company, in the past earnings thereof and in its future earnings.
The complainants allege that the plan and amendments "violate, and impair the obligations of the contract between the complainants and the other stockholders of the defendant, as expressed in the terms and provisions of its certificate of incorporation, and in the terms and provisions of the certificates of said preferred stock owned by the complainants."
The plan proposes to pay the sum of $14.50 in cash, to only the 7% preferred stockholders who convert their present stock into the "new 5 1/2% preferred stock." No payment is made in cash to the 7% preferred stockholders who do not convert their shares into the 5 1/2% preferred stock. That feature of the plan, as well as other features of the plan, complainants say "are designed, without warrant in law or equity, to force the 7% preferred stockholders to convert their stock into the 5 1/2% preferred stock."
Complainants say "that by other provisions of the plan, such as the amount of dividends which will thereafter be payable upon the shares issued in exchange, the sum which *Page 324 
would be chargeable against the surplus or accumulated profits of the defendant company in the event of the redemption of the 5 1/2% convertible preferred stock at $115 per share, as well as by other features of the plan, the rights of the preferred stockholders under their contract and in and to the accumulated surplus and net profits of the defendant company will be unlawfully affected to their detriment." It is further alleged that the defendant company has consistently failed "to declare dividends upon the preferred stock when its financial condition was such that it could readily have done so" and that the "financial condition of the company is such that a dividend should now be paid on account of the accumulated dividends due on the preferred stock of the defendant company, and that no bonafide reason exists from the point of view of the defendant company why such dividend should not be declared and actually paid at this time."
The defendant company was organized in 1906. It has outstanding 73,115 shares of 7% cumulative preferred stock, having a par value of $100 per share. Upon these shares there are arrears of dividends in the amount of $54.50 per share, or a total arrearage of $3,984,767.50. There are 981,500 shares of common stock outstanding of a par value of $10 per share, or a total common capital stock of a par value of $9,815,000.
As of September 30th, 1939, the defendant company had current assets of $12,904,614.74. Included in these assets were cash and marketable securities to the extent of $3,697,000. The current liabilities, as of the same date, were less than $1,100,000. Thus, the complainants say, its current assets alone exceeded the entire amount due on the preferred stock, both its par and accrued dividends. The earned surplus of the company, as of the same date, was $16,403,778.81.
Under the provisions of the defendant company's charter, the 7% cumulative preferred stock is not redeemable.
The complainants take the position that the preferred stockholders have a vested right to at least the extent of their dividend arrears as against the earned surplus of the defendant company which is in excess of $16,000,000. They contend *Page 325 
that the board of directors of the defendant company are chiefly and principally interested in the common stock, because of the fact that such stock in days of prosperity profits more from the distribution of earnings than does the preferred stock. They admit that the directors also hold preferred stock, but that the principal source of profit is largely derived from the common stock holdings.
The complainants insinuate that it is the settled design of the defendant's board of directors "to get rid of the preferred stock arrearages with as little cash as possible, and to force the stockholders to give up their non-redeemable stock for a stock redeemable at the option of the company." Outwater v. PublicService Corp., 103 N.J. Eq. 461; 143 Atl. Rep. 729; affirmed,104 N.J. Eq. 490; 146 Atl. Rep. 916.
To the assenting shareholders, the defendant company offers $14.50 per share, but no such allowance is made to the non-assenting shareholders. Such allowance discharges an equal amount of dividend arrearages, which is, in effect, a charge against the surplus in which the preferred stockholders have vested rights. As to the allowance of $14.50 per share, the complainants argue that it is at once obvious that the plan interferes with the present vested rights of the 7% preferred stockholders in the earned surplus of over $16,000,000 in the following respects:
"(1) The surplus is reduced by the amount of money needed to pay $14.50 per share to the assenting stockholders. The non-assenting stockholders receive nothing on account of their proportionate vested right in the surplus funds.
"(2) The 7% preferred stock, as far as its arrears of dividends are concerned, is made subject to the dividends in the future on the new preferred stock, and the 7% preferred stock. The dividends upon the 1.4 shares of new stock issued for each share of the old stock, will amount in each year to $7.70 per share. Hence, there will be a greater accumulating dividend charge as against the non-assenting preferred stockholders than they have heretofore been subjected to. By this means also, the present earned surplus in the future may be used to pay these charges on the new stock, without regard to the discharge of the present amount of dividend arrears. *Page 326 
"(3) The new stock is redeemable at the option of the company at $115 per share. Under the statute in our state, the difference between par and the redemption price can only be charged against surplus, so that here also the non-assenting stockholders face the possibility of having the surplus in which they have vested rights, further reduced through the redemption of the preferred stock. The redemption price would involve a charge against surplus equivalent to $21 per share of 7% preferred stock.
"(4) The clause relating to the rights of the 7% preferred and 5 1/2% preferred in case of the dissolution or winding up of the company is not entirely clear. It is susceptible of the construction that in the event of a liquidation, and in the event that there are not assets available to pay the entire amount due to both classes of preferred stock, together with dividend arrears, that distribution may be had on the basis of the number of shares, rather than the amount due for principal and dividends. If this is so, it constitutes another burden placed upon the non-assenting stockholders."
The defendant says that the new preferred stock and the old preferred stock are entitled pari passu to current dividends. Both new and old preferred stock are entitled pari passu upon liquidation to par and unpaid accrued dividends thereon. The current dividends on both new and old preferred must be paid before the accrued dividends in arrears to July 1st, 1940, on the old preferred.
It asserts that the "plan becomes effective only in case stock is deposited thereunder in an amount sufficient, in the sole discretion of the board of directors, to justify it in declaring the plan effective, provided, that it must be declared effective if 90% is deposited. Under the plan, 1.4 shares, that is to say, shares with a par value of $140, of the new 5 1/2% stock, together with $14.50 in cash, are issued to each holder who accepts the same in lieu of one share of the old 7% stock of the par value of $100 with accumulations of $54.50."
The new stock is redeemable at $115 per share. The old stock is not redeemable. The new stock is convertible into seven shares of common stock, which is equivalent to 9.8 shares to one share of the old stock (1.4 times 7). *Page 327 
The defendant contends that the plan does not unduly favor the common stock as alleged by the complainants.
The stockholders of the defendant company held a meeting at which votes were cast for and against the plan as follows: In favor of the plan, 77.05% preferred, 69.55% common; against the plan, 6.19% preferred, 0.48% common. Of the total of 4,517 shares of preferred stock voted against the plan, somewhat less than one-half were voted at the meeting.
The defendant calls attention to the fact that the plan is voluntary, and that the stockholders are given the option to accept or reject it.
The plan presents the feature of deferring the payment of current dividends on both the old and the new preferred stock.
That an amendment providing for a new issue of preferred stock which should have priority as to future dividends over the existing preferred, will be allowed, is expressed in GeneralInvestment Co. v. American Hide and Leather Co., 98 N.J. Eq. 326; 129 Atl. Rep. 244, but the Court of Errors and Appeals there held it was permissible provided it did not affect the rights of preferred stockholders to accrued unpaid dividends. Chief-Justice Gummere in that case, speaking for the Court of Errors and Appeals, in part said:
"Next, it is asserted on behalf of the appellants that the corporation is without power to appropriate to the purchase of the stock proposed to be retired accrued dividends belonging to the preferred stockholders, which now remain in the treasury of the company. If the purpose indicated is to be attributed to the corporation, the appellants are entitled to have it restrained from using so much of these accrued dividends as are applicable to the stock held by them, respectively, in the purchase contemplated by the plan which has been adopted by the shareholders."
Judge White in the same case concurring, emphasized the rights of the preferred stockholders "to receive compensation according to their contract."
Because of its application to the instant case, I take the liberty of quoting extensively Vice-Chancellor Bentley's remarks in Lonsdale Securities Corp. v. International Mercantile *Page 328 Marine Co., 101 N.J. Eq. 554; 139 Atl. Rep. 50, where he in part said:
"These complainants apply to this court for the only complete and adequate protection that can be afforded their property rights. Under the contract growing out of the section of the defendant's articles of incorporation which has been set out above, they have become vested with rights as against the holders of the common shares in a surplus of at least some $17,000,000 that the company has accumulated and also in future earnings and all other property of the corporation. To permit the contemplated change in the certificate of incorporation would result in divesting them of those rights in violation of our law. There are now due the preferred stockholders almost $36,000,000 of accumulated dividends. The purpose of the proposed change is expressly to divest the preferred stockholders of all right to ever collect this existing claim.
"* * * The fourth section of the existing certificate of incorporation of the defendant creates a contract between the defendant and the complainants by which the latter are clothed with certain property rights having a fixed, determinate value. In place of those rights it is intended to substitute others of a less valuable character over the objection of the complainants. That they do object is conclusively shown by the filing of these bills. It is true that there would be placed in the hands of the owners of the new shares of stock issued to replace the preferred shares intended to be retired, a greatly increased power of franchise, but the complainants neither seek, nor wish, to surrender their present rights for the one offered in their stead, and it is beyond the power of the corporation, this court or the legislature to compel it.
 * * * * * * *
"Not only would the change result in an injury to the future, as well as the past, dividend rights of the preferred stockholders, but it would also interfere with and materially diminish or abolish vested rights."
Day v. United States Cast Iron Pipe and Foundry Co., 95 N.J. Eq. 389; 123 Atl. Rep. 546; Bassett v. United States Cast IronPipe and Foundry Co., 75 N.J. Eq. 539; 73 *Page 329 Atl. Rep. 514; Willcox v. Trenton Potteries Co., 64 N.J. Eq. 173; 53 Atl. Rep. 474; Pronick v. Spirits Distributing Co.,58 N.J. Eq. 97; 42 Atl. Rep. 586; Colgate v. United States LeatherCo., 73 N.J. Eq. 72; 67 Atl. Rep. 657. In the latter case, the court, in part, said:
"As the proposed consolidation agreement, for the reasons stated, inequitably affects the rights of the preferred stockholders in relation to the accumulated dividends upon their stock, I conclude that its execution must be enjoined."
Windhurst v. Central Leather Co., 101 N.J. Eq. 543;138 Atl. Rep. 772; 105 N.J. Eq. 621; 149 Atl. Rep. 36; affirmed, 107 N.J. Eq. 528; 153 Atl. Rep. 402; Keller v. Wilson (Del.),190 Atl. Rep. 115; Consolidated Film Industries v. Johnson
(Del.), 197 Atl. Rep. 489; Roberts v. Roberts-Wicks Co.
(New York Court of Appeals), 77 N.E. Rep. 13; Patterson v.Durham Hosiery Mills, 200 S.E. Rep. 906.
While it can be conceded that a corporation may have the right to provide for funding or satisfying rights, in respect to dividends in arrears by the issuance of stock therefor or otherwise (R.S. 14:11-1 (n)), however, the amendment must preserve and hold inviolate vested rights and contractual obligations.
The complainants and the defendant, by oral argument and written briefs, very ably presented their respective sides of the instant case. However, I feel, in view of all the circumstances, that a restraint as sought by the complainants should be allowed pending final hearing. *Page 330