This is a suit to compel the redemption of preferred stock issued by the defendant Kraeuter Co. Complainants own 120 shares out of a total 1,392 shares of the stock outstanding. The stock is entitled to cumulative dividends at the rate of 7 per cent. when and as declared by the directors. The provision for redemption of the stock reads as follows:
"Each and any preferred shares may, by vote of the majority of the board of directors, be redeemed at any time after three years from the date of its issue at the price of $110 per share and shall be redeemed at that price at the expiration of 15 years from the date of its issue."
All the preferred stock has been outstanding more than 15 years. Defendant concedes that upon redemption, it must pay not only the par value of $100 per share and the premium of $10 but also all accumulated dividends. No dividends have been paid since 1930, so that the accumulations amount to more than $77 a share.
The Company asserts that it is not obliged to redeem its stock unless and until its directors accumulate sufficient cash for the purpose, and decide that the corporate enterprise will not be harmed by paying off the preferred stock. The paragraph relating to redemption is found in the certificate of incorporation; it is authorized by the statute (R.S. 14:8-1, etc.) and is part of the contract between preferred stockholders and the corporation.Pronick v. Spirits Distributing Co., 58 N.J. Eq. 97; Meredith
v. Zinc Co., 55 N.J. Eq. 211; 56 N.J. Eq. 454; Buckley v.Cuban American Sugar Co., 129 N.J. Eq. 322. The words quoted, that the stock "shall be redeemed" at the expiration of 15 years, must be given some reasonable meaning. Without that clause, the Company has the privilege or option of redeeming the stock. The additional clause can be construed only as creating a positive obligation on the part of the corporation to redeem. "While it is quite desirable that corporations organized under *Page 477 
the laws of New Jersey should have ample proper latitude in making readjustments to meet new and unexpected business conditions, it is even more important that the contractual rights of stockholders of all classes of stock shall be upheld by the courts under all circumstances." General Investment Co. v.American Hide and Leather Co., 98 N.J. Eq. 326, 338. That fulfillment of the contract may work injury to common stockholders, is immaterial. Complainants have a right to enforce the redemption of their preferred stock. But the Company's agreement to redeem its stock is subject to the implied limitation that it cannot be enforced at a time when the corporation is insolvent or when redemption would render the corporation insolvent. Since the limitation is implied for the protection of creditors, common stock is not taken into account as a liability. Westerfield-Bonte Co. v. Burnett (Ky.),195 S.W. Rep. 477; Crimmins Pierce Co. v. Kidder, c.,Corp. (Mass.), 185 N.E. Rep. 383; 88 A.L.R. 1122; Koeppler
v. Crocker Chair Co. (Wis.), 228 N.W. Rep. 130.
It becomes necessary therefore to consider the condition of the Company. The Company is engaged in manufacturing and also it holds a trifle over 70 per cent. of the capital stock of another corporation, the Kroydon Company. The defendant urges the court to pretend ignorance of the affairs of the Kroydon Company and to consider only that the defendant holds stock of that company which appears on its books at $102,000 and which has no established market value. I cannot adopt that course. The defendant has power to elect for the Kroydon Company such directors as it chooses and through them to govern its business, declare dividends and take any other proper action in order to make Kroydon assets available for creditors and stockholders of the defendant. Of course, the rights of creditors or minority stockholders of the Kroydon Company cannot be ignored or infringed. To grasp the situation, the assets and liabilities of both companies must be considered. A consolidated balance sheet as of December 31st, 1940, here follows: *Page 478 
 ASSETS
Cash ................................................. $60,813
Notes and accounts receivable ........................ 190,795
Inventories .......................................... 377,396
Land ................................................. 56,933
Plant and equipment ......................... $726,620
 Less depreciation reserve ................. 448,343
 ________ 278,277
Dies ................................................. 44,412
Deferred charges and other assets .................... 19,830
 __________
 $1,028,456
 LIABILITIES
Notes payable ........................................ $101,393
Accounts payable ..................................... 62,675
Accrued payables ..................................... 24,326
Reserve for Federal Income Tax ....................... 39,528
Kroydon preferred and minority stock and proportion of
 surplus ............................................ 129,625
Kraueter preferred stock .................... $139,200
 Premium on retirement ..................... 13,920
 Cumulated dividends ....................... 90,440
Common stock ................................ 252,000
Surplus for common stock .................... 175,349
 ________
 Net worth of Kraeuter Co. ........................ 670,909
 __________
 $1,028,456

No claim is made that the assets are overvalued, or that the condition of the companies is otherwise than as shown in this balance sheet. Indeed, book value of plant and equipment was arbitrarily reduced five years ago by $244,842. It will be observed that the amount required to retire the preferred stock on December 31st, 1940, was $243,560, and that there would remain for the common stock at book values, $427,349.
The consolidated analysis of operations for five years ending December 31st, 1940, is illuminating:
Profit for Kraeuter stockholders ..................... $163,034
Profit Kroydon preferred-minority ............ $82,802
 Less dividends ............................. 22,182
 _______ 60,620
 _________
Undistributed profit ................................. $223,654
Reserve for amortization and depreciation, net ....... 143,380
 *Page 479 
Sundry assets liquidated ............................. 44,421
Increase in common stock ............................. 100
 _________
 Total fund available ............................. $411,555
 Disbursed as follows:
Kroydon preferred stock retired ...................... $1,282
Net liabilities reduced ...................... $26,927
 Less Gairoard gift ......................... 24,978
 ________ 1,949
Increase, notes and accounts receivable .............. 83,977
Increase, inventories ................................ 117,512
Net additions to plant and equipment ................. 157,100
Increase in cash ..................................... 49,735
 _________
 $411,555

The profit in this period of which the Kraueter stockholders were the beneficial owners was enough of itself to pay two-thirds of the amount required to retire the preferred stock. In addition, there was taken out of profits as reserves a very large sum. The directors of the defendant have had available for corporate purposes in the five-year period $400,000 and have used this fund for the purpose of expansion. Note the additions to inventories and plant of $275,000.
The money needed to retire the Kraeuter preferred stocks amounts to a quarter million dollars. I do not believe the company can raise it immediately without jeopardizing creditors or Kroydon minority stockholders. But this situation does not annul the preferred stockholders' contract, or prevent the court from awarding them a remedy. "One of the most striking and distinctive features of courts of equity is, that they can adapt their decrees to all the varieties of circumstances which may arise, and adjust them to all the peculiar rights of all the parties in interest." Story Eq. § 28. "It is absolutely impossible to enumerate all the special kinds of relief which may be granted, or to place any bounds to the power of the courts in shaping the relief in accordance with the circumstances of particular cases." Pom. Eq. § 170. "To enforce trusts, suppress fraud and compel the performance of contracts are peculiarly the province of a court of equity. These ends may be attained by means of injunction, or decree for specific performance or both. If the subject-matter is within the jurisdiction of the court, its powers and *Page 480 
process will be used so as to effect the object to be attained."Johnston v. Jones, 23 N.J. Eq. 216, 225.
The defendant should have prepared for the retirement of its stock and taken every reasonable necessary step in order to be able to fulfill its contract. Instead of doing so, it pursued a contrary course. Now it will be compelled to adopt all measures necessary for performance. Counsel will employ their ingenuity in devising proper means to accomplish the redemption of the preferred stock. I offer a few tentative suggestions.
Complainants' plight is due in large part to the policy of the Company in using all available funds to expand the business. Expansion must be stopped until the stock is paid off.
The amount due on the stock should be gradually reduced till it reaches a sum more easily handled. To this end a dividend of 20 per cent. within 30 days of the decree and thereafter quarterly dividends of 10 per cent. each, until all accumulations are paid, when the parties could apply for further instructions. The rate suggested would not consume all earnings if they continue at the rate of 1940, but I surmise taxation and shortage of materials will reduce net profits.
Complainants should be empowered to sell defendant's Kroydon stock, if they can find a purchaser, for not less than, say, $200,000, the proceeds to be used to retire the preferred stock. As pointed out in defendant's brief, "There is nothing in common between these two corporations (Kraeuter and Kroydon) except the fact that one person or his family happen to own stock in both companies. They have always been and are operated as separate organizations." The sale of the Kroydon stock would not disrupt the Kraeuter business. Nor would it injure creditors, since Kraeuter current assets are double the sum of all its liabilities.
Or the preferred stock of such of the holders as are willing, could be immediately retired by the distribution among them of about $30,000 (but not more than the total due them) and by giving them notes for the balance payable about $12,500 quarterly with interest at less than the legal rate, the notes to be subordinate to presently existing debts, but to be secured by pledge of the Kroydon stock. *Page 481 
Complainants point out that they are the only stockholders who are asking for payment. The defendant could, without difficulty, retired their stock immediately. But all stockholders of the same class must be offered equal treatment. The court should not decree payment of complainants alone for such payment might jeopardize the others. Of course, stockholders may elect, if they choose, not to take advantage of the decree.